# Wigginton & Sweeney, Partners, et al. v. Mabel Bruce's Guardian.

## Same v. Esma Bruce's Guardian.

(Decided March 20, 1917.)

## Appeals from Jefferson Circuit Court (Common Pleas Branch, First Division).

1. Animals—Running at Large—Injury to Persons—Statutes—Sections 4646 to 4651 inclusive of the Kentucky Statutes, with reference to stock running at large, provide a remedy for injury to persons, as well as to property, against the owner of stock running at large in violation thereof, without regard to the vicious or mischievous tendencies of the stock.

2. Animals—Running at Large.—The words "to permit any stock to run at large," as used in these sections, mean to knowingly allow cattle to roam at large at will, or wander without restraint or control; or to fail to exercise, in order to prevent same, that degree of care that is usually exercised by ordinarily prudent persons under the same circumstances.

3. Animals—Running at Large—Evidence.—Evidence that an employee had forgotten to close a door through which the defendants' horses escaped when let out into the stable to drink, held sufficient to take the case to the jury upon the question of whether or not the horses were running at large as a result of defendants' negligence.

CHARLES CARROLL for appellants.

ROBERT W. COLE and BURNETT, BATSON & CARY for appellees.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

This appeal embraces two cases, involving the same facts, but different injuries, which were heard below as one case. In each case, there was a verdict and judgment in favor of the plaintiff against defendants, for the sum of two hundred and fifty dollars. A motion and grounds for a new trial having been overruled, the record in the consolidated case is brought here by defendants, upon a motion for an appeal.

Since the construction of an act of the legislature, of May 6th, 1892, sections 4646 to 4651 inclusive, of the Kentucky Statutes, being "An act to regulate running at large of stock," is involved, upon two questions not heretofore considered by this court, the motion for an appeal is sustained.

The petitions herein set out the fact that the above act, as a result of an election held in Jefferson county, in 1898, was in force in that county at the times complained of, which fact is admitted by the defendants. The petitions further alleged, that the plaintiffs, who were infants and sued by their statutory guardians, on the 17th day of November, 1914, were driving on a public highway in said county, in Jeffersontown, and that at said time the defendants were the owners of certain horses, which they, in violation of law and with gross negligence, had turned loose and permitted to be upon said highway, without attendants and running at large; that while said horses, so unattended and at large, were wildly running upon said highway, they ran about and up to the pony which plaintiffs were driving at the time, kicked at it and caused it to run away and off of the public highway, precipitating plaintiffs, and the vehicle in which they were riding, over a high embankment, resulting in serious injuries to both plaintiffs.

The first complaint by appellants, is: (1) That the lower court erred in overruling demurrers to the petitions, it being contended for the defendants, that the petitions are not sufficient, under the common law, because they fail to allege that the animals which did the injury were vicious animals, inclined to attack other stock, or human beings, and that this fact was known to the defendants, at the time they permitted the stock to run at large; and, (2) that no right of action is given, by the statute, for the injuries alleged in the petition.

It is most ingeniously argued by the learned counsel for appellants that, by the adoption of our present stock law, the legislature, in effect, readopted, as the law of this state, the common law with reference to injuries done by stock running at large, confessedly not in force in this state, for a long time before the enactment of that statute, as a result of former statutes and the decision of this court, refusing to recognize and enforce the common law, in such matters, because of its inapplicability to conditions in this state; this upon the theory that the common law with reference to stock running at large was originally in force in this state, and had been abandoned, when the state was but sparsely settled, because it was inapplicable to conditions here, but that, when most of our land came under cultivation, and it became more practicable to keep up rather than

fence against stock, the present law was enacted to meet the same conditions out of which the common law with reference to stock running at large grew, and contains some of the provisions peculiar to the common law. Therefore, it is argued, we must presume that the legislature, in enacting the law, intended only, to give such remedies as were recognized by the common law, as originally adopted.

While this theory is interesting, it is not convincing, and we are unwilling to give to the history of the development of the law, the effect of taking us back to the place of our beginning, especially in view of the language employed in the statute before us, and the construction placed upon similar statutes in other jurisdictions.

One section of the law, being section 4649 of the statutes, provides, in part, that it shall be unlawful for any person to permit any cattle, and the species thereof named in the petition for an election, owned by him, or under his control or custody, to run at large in the territory affected, providing further, that:

"Any person so offending shall be fined not less than five nor more than twenty-five dollars for each offense; and if any damages shall be committed by cattle in any such district, districts, or county, the owner of such cattle shall be liable for all such damages, whether the place where the damages occurred be enclosed by a lawful fence or not, and the person damaged shall have a lien on the cattle committing the damage for the amount thereof and cost of suit; and it shall furthermore be the duty of any constable, sheriff or town marshal to impound any cattle found running at large in such district, districts, or county, and the owner or bailee thereof shall pay to the officer impounding, for each head so impounded, one dollar and the cost of feeding and taking care of such cattle."

It will be noticed, that the statute, as did the common law, provides a lien upon the stock, for the damage done by them, and that the stock found running at large may be impounded, but does not confine the remedy of the person injured to the common law remedies, but states, in terms, that the owner of such cattle shall be liable for *all damages done by the cattle*, whether the place where the damages occurred be enclosed by a lawful fence or not. While it is true, that there is some force

in the argument that, by the use of the phrase: "Whether the place where the damages occurred be enclosed by a lawful fence or not," we may infer that the legislature had in mind such damages as the stock might do by trespassing upon the lands of another, to the growing grass or crops upon such land, it is also true, that the language used is broad enough to include any damage done by the stock, while at large in violation of the statute, whether to the person or the property of another, and this construction, which is supported by unanimous authority, seems to us more consonant with reason, than the restricted construction contended for by appellants; for it is most unreasonable to suppose, that the legislature meant to provide, by an elaborate law, against the possible injury, by stock running at large in violation of law, to the fields and crops of another, and did not mean to provide any remedy for any injury to the person of another, by the same violation of the law, even though his life was thereby destroyed. In the absence of a clear intention to so restrict the meaning of the law, we are unwilling to do so by implication.

In Decker v. McSorley, 86 N. W. 554, the court, in passing upon the effect of an ordinance enacted by the common council of LaCrosse, Wisconsin, similar to our statute, said:

"As to the claim that the ordinance was not intended to protect persons from the viciousness or playfulness of animals at liberty upon the highway, we think it equally untenable. Doubtless there were several objects in view. It was probably not expected that chickens or poultry would inflict bodily injuries on passengers, and, as to this class of animals, the only object was to prevent the well known nuisance and danger of their committing depredations on private property which result from their being at large. As to larger animals, such as horses and cows, doubtless the same object was in view, but we see no reason to doubt that the obviation of other dangers was also aimed at. . . . . To say that the common council of La Crosse had no intention of guarding the public against such dangers in enacting the ordinance would, we think, be entirely unreasonable, and would in effect, accuse them of passing an elaborate law to protect lawns and sidewalks from disfigurement, and leave life and limb unprotected. The principle that the owner of the horse which is allowed to run at large

upon the highway contrary to law is responsible for the injuries which the horse inflicts upon persons or property, even in the absence of known viciousness of the horse, has been distinctly laid down in a number of states. Baldwin v. Ensign, 49 Conn. 113; Decker v. Gammon, 44 Me. 322; Barnes v. Chapin, 4 Allen 444." To the same effect are Dickson v. McCoy, 39 N. Y. 400; Jewett v. Gage, 55 Me. 538; Leonard v. Doherty, 55 N. E. 461; Goodwin v. Gay, 15 Pa. 188.

In vol. 3, C. J., page 94, it is stated:

"If domestic animals injure any person or property while wrongfully in the place where the injury is done, the owner is liable, although he had no notice that such animal was accustomed to do such wrong or mischief. In such case the ground of action is that the animal was wrongfully in the place where the injury was done, and it is not necessary to allege or prove any knowledge on the part of the owner that such animal had previously been vicious. Thus a person who allows his horses to be at large where they have no right to be, as on a sidewalk, or who permits his cattle to run in a highway in violation of a statute prohibiting them from running at large therein, is liable in damages for injuries committed by them while so running at large, without reference to the question of the animal's viciousness, and even though he did not know that they were in the highway at the time of the injury, unless their presence there is not due to his fault, or constitutes no breach of duty due from defendant to plaintiff, in which latter cases scienter must exist." We, therefore, conclude, that the reasonable construction of this statute is, that it provides a remedy for the injury to persons, as well as to property, against the owner of stock at large in violation of the statute, without regard to the mischievous or vicious tendencies of the animals; and, even if this were not true, ample authority for the action is found in section 446 of the Kentucky Statutes, which is of general application and is as follows:

"A person injured by the violation of any statute may recover from the offender such damage as he may sustain by reason of the violation, although a penalty or forfeiture for such violation be thereby imposed."

It is, therefore, apparent that the court did not err in overruling the demurrer to the petition.

2. It is also insisted, that the court erred in refusing appellants' motion for a peremptory instruction. The evidence for plaintiffs was, in substance, that, while driving along a public highway, in Jeffersontown, three loose horses, belonging to the defendants, came running down the street; that two of the horses ran past the plaintiffs but the other ran up in front of the pony they were driving, placed his nose near the nose of the pony, wheeled and kicked at it, and ran back down the street; that the pony started to follow this horse, got beyond the control of the plaintiffs, ran off and over an embankment and against a telephone or electric light pole, throwing them out of their cart and injuring them. Witnesses for the plaintiffs did not see the defendants, or any one else, after the horses, or trying to restrain them, nor did they see any dog or dogs after or about the pony, that could have frightened him or caused the runaway, and some of the witnesses for the plaintiffs say that they had seen the horses of the defendants running at large upon the streets of the town upon former occasions.

The testimony for the defendants was, that, as was their custom, upon that morning, and just before the accident, they turned these three horses out of their stalls, to water them, at a watering-trough inside the livery stable; that the horses, upon that occasion, contrary to custom, after drinking, failed to return to their stalls, but, instead, went out of the back door of the stable, into an alley, and thence, while one of the defendants and an employee were attempting to get the horses back into the stable, ran out the alley, into the street, with this defendant and his employee after them and that, before they could overtake the horses, and as they were passing plaintiffs' vehicle, a dog ran out into the street, barking at the pony, and jumped up and bit, or bit at, the pony, causing him to run off.

Silas Samuels, the employee of the defendants, testified, that, upon the morning of the accident, before he turned the horses out of the stalls to let them drink, he had been hauling manure out of the stable, into the alley, through the back door out of which the horses ran and, that he had forgotten to close that door before he turned the horses out of the stalls.

We think, under this evidence, it was a question for the jury, whether, upon this occasion, the horses of de-

fendants were running at large upon the public highway with the permission or as a result of appellants' negligence.

It is said in 2 Cyc. 443:

"By the weight of authority, if the owner of animals exercise ordinary care and diligence in restraining them, but, without fault on his part, they escape, and he makes diligent search for them, they cannot be said to be running at large. It is otherwise if animals are at large through the negligence of the owner, or of his servants, or are permitted to go at large after knowledge of their escape. The fact that an animal is at large is *prima facie* evidence that it is at large contrary to the terms of the statute," and, on page 444 of the same volume: "Suffering or permitting an animal to go at large implies knowledge, consent, or willingness on the part of the owner, or such negligent conduct as is equivalent thereto; but does not comprehend a case where, through some untoward circumstance, the owner is unable to watch and care for it in a particular instance."

See also 3 C. J., page 180; Schlacter v. Wachter, 78 Ill. App. 67; Coles v. Burns, 21 Hun. 246; Lyman v. Dale, 156 Mo. App. 427; Gary v. Arnold, 175 Ill. App. 365; Town of Collinsville v. Scanland, 58 Ill. 221.

Under the above authorities, it is our judgment, that the words in the statute in question, "To permit any stock to run at large," are properly construed to mean, as defined by the trial court, to knowingly allow stock to roam at large at will, or wander without restraint or control, or to fail to exercise, in order to prevent same, that degree of care that is usually exercised by ordinarily prudent persons under the same circumstances, and, that the evidence in this case, upon this question, presented an issue for the jury, and the court did not err in overruling the motion for a peremptory instruction.

Wherefore, the judgment is affirmed.