## Jones et al. v. Jones et al.

(Decided April 19, 1929.)

CHARLES FERGUSON for appellants.

WILSON & WILSON and J. D. MOCQUOT for appellees.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

This is an appeal, pursuant to section 298 of the Civil Code, from an order of the Livingston circuit court appointing a receiver, and from two supplemental orders which were designed to make effective that order. F. A. Jones, D. F. Jones, and O. W. Jones are brothers, and in

1925 formed a partnership for the purpose of operating a farm of about 350 acres on seven-mile island in the Tennessee river. In June, 1927, the brothers found themselves in such total disagreement that it was not possible for them to continue their partnership further. They called in another brother, Chas. M. Jones, in whom at that time they all seemed to have great confidence, and by a contract entered into between them and Chas. Jones agreed to submit all their differences in the matter of this partnership to him for adjustment. This contract, very like the one involved in the case of Modern System Bakery v. Salisbury et al., 215 Ky. 230, 284 S. W. 994, which we held to be a common-law arbitration agreement, authorized Chas. M. Jones to make a settlement of the partnership affairs and pending his investigation and the making of his award to conduct the farming business for the partnership. As he lived in Florida it was agreed that he might operate the farm through an agent, and he selected D. F. Jones, one of the partners, as such agent. Chas. M. Jones entered upon the discharge of his duties. Soon a very acrimonious correspondence sprung up between the various partners and also at least between F. A. Jones and the arbitrator Chas. M. Jones. Charges and countercharges were hurled about by the parties. Further F. A. Jones was continually pressing the arbitrator to come to some decision in the matter. Finally, in June, 1928, the arbitrator made a partial and tentative report in writing, a copy of which he sent to each of the partners, with a request that they look it over and point out to him any errors which they thought it contained, so that, if any such criticisms were justified, he could adjust his report accordingly. He stated that it would be impossible to make any final report for some three or four months to come. O. W. Jones and D. F. Jones seemed to have acquiesced in this tentative report, but F. A. Jones took violent exceptions to it. After pointing out what he claimed to be many errors in the report, he wound up with the assertion that this report was the result of a biased attitude on the part of the arbitrator. The correspondence between him and the arbitrator becoming even more acrid than the bitter correspondence of the previous winter, F. A. Jones finally brought this suit in July, 1928, for a settlement of the partnership affairs. For defense to the suit, the partners relied upon the arbitration agreement, and expressed their willingness to

abide by the tentative findings theretofore made by the arbitrator and by whatever final award the latter should make. By reply F. A. Jones attacked the arbitration proceedings on the ground of fraud, denied their validity, and averred his unwillingness to be bound by them. In October following, on motion made by F. A. Jones in vacation, the judge of the Livingston circuit court appointed a receiver for the partnership, this being the order from which this appeal is prosecuted. It appears that, notwithstanding this suit and this order, the arbitrator went ahead, completed his work under the arbitration agreement, and in December, 1928, filed a final award, which by an amended answer was relied on in bar of the prosecution of this suit. The arbitrator not having turned over to the receiver appointed by the court the property of the partnership which he had in his hands, the two supplemental orders above mentioned were entered in order to enforce obedience to the October order.

It cannot be doubted that, if the arbitration agreement relied upon by the appellants is not a good defense to this action, then the appointment of the receiver was justified. The partnership had, and yet has, considerable property, both real and personal. The personal property consisted of live stock, farming implements, and staple crops which had been harvested in the season of 1928. This property, especially the live stock, had to be taken care of, fed, and at the proper time disposed of. The crops had to be used or sold so as to conserve the interests of the parties to this litigation. The farm ought not to be allowed to lie fallow for the coming season, and, unless the farming implements are properly protected and taken care of, they will rapidly deteriorate, and perhaps become lost. The partnership also is under an obligation to the United States Government to maintain a light on the farm for the purposes of navigation in the Tennessee river, and some one has to take care of and maintain that light. The relationship existing between the partners is so strained and bitter that it is impossible to even hope for the slightest co-operation between them. There is absolutely nothing to do but to appoint a receiver to take charge of the partnership property pending a final settlement of the partnership affairs.

Appellants insist, however, that it was not proper for the lower court, on the motion for the appointment of

a receiver, to hold as it did that the arbitration agreement was void, and that, this agreement being prima facie a good defense to the appellee's cause of action herein, the appointment of the receiver was improvident, because the arbitrator to all intents and purposes could under the arbitration agreement perform all the duties that a receiver could. Of course this position of the appellants is founded on the proposition that the arbitration agreement was prima facie a good defense to the appellee's cause of action. We need not inquire whether the allegations of fraud, bias, and prejudice made by the appellee in his pleadings, and denied by the appellants in the light of what proof there is in this record on those issues, justified the court in ignoring the arbitration agreement. Even if it be conceded that the arbitration agreement in its inception was valid, and that the proceedings had under it up to the time of the filing of this suit were done with due regard to all of the rights of the parties, and that the arbitrator was not prejudiced or biased, the fact yet remains that it is the settled law that until a final award is made an arbitration agreement is revocable. Thus in Peters' Adm'r v. Craig, 6 Dana, 307, which was a suit brought by an artist for four portraits which he had painted, the defense among other things was that there had been by agreement an arbitration, and that the arbitrators had decided there was nothing due the artist. In answer to that the court, speaking through Judge Robertson, said: ''Nor does it appear that, if there had been a binding submission, there was not a revocation of it before the award was made, for this suit was brought the day after the reference, and the evidence does not show that the award had been regularly made and completed before that time. Such a submission might have been revoked by either party, prior to a binding award; and the institution of this suit was an implied revocation, unless the award had been conclusively made before the suit was commenced.''

In 2 R. C. L. 366, it is said: ''At common law the authority of an arbitrator is in its nature revocable and, generally speaking, the submission may be revoked at any time before an award is made; and where, by reason of its incompleteness or for other cause, the award actually rendered is interlocutory and not final in character, it is insufficient to operate as a bar to a revocation by either party.''

In 5 C. J. 53, it is said: "At common law, as regards the power of the arbitrators to render an award which will be binding on the parties, the general rule is well settled that either party can revoke the submission at any time before an award has been made. The remedy of the party aggrieved is an action on a breach of the agreement to submit, to recover damages, if any, caused by the revocation of the other party. The rule has at times been severely criticized; but it is too well established to admit of doubt. 'The reason why the agreement was revocable under common law was, not that arbitration was not favored by it as tending to end litigation, and not for want of consideration, as the ending of litigation was strong consideration, but because of that principle of law that parties could not, by agreement, oust the courts of jurisdiction assigned them by law, and could not debar themselves from appealing to the law and tribunals of the land.' "

Under the Peters case the bringing of this suit was a revocation of the arbitrator's further right to proceed under the articles of arbitration entered into by the partners. Not only this, but F. A. Jones expressly told the arbitrator that he would no longer be bound by the arbitration agreement, and, as no final award had been made at the time of this revocation, it follows that, even though F. A. Jones may be liable to his copartners for revoking the contract of arbitration, a question we expressly do not herein decide, yet, he had the power to revoke it. The arbitration agreement and the proceedings had under it up to the time of the revocation, so far as this record shows, therefore presented no defense to this settlement suit. The chancellor did not err in entering the order appointing the receiver and the two supplemental orders designed to put that order into effect. These orders are therefore affirmed.