## Kramer v. Gough et al.

May 13, 1949.

Ben B. Morris for appellant.

M. C. Anderson for appellee.

OPINION OF THE COURT BY JUDGE REES—Reversing.

This is an action for damages to the tenants' share of a corn crop caused by the landlord's cattle. The tenants recovered a judgment for $850, and the landlord has appealed.

Frances Gough and Jim Graves entered into a rental contract with T. J. Kramer, the owner of a large tract of land in Ballard County. The contract was oral and for the year 1947. Gough and Graves agreed to cultivate about 200 acres in corn, a small acreage in tobacco, and to harvest the hay crop. They were to receive two-thirds of the corn and Kramer was to receive one-third. Kramer was pasturing 57 head of cattle on the farm, and during the summer these cattle got into one of the cornfields and damaged the growing corn. On December 15, 1947, Gough and Graves brought this action against Kramer to recover damages in the sum of $1,200. They alleged that the defendant negligently permitted cattle owned by h¹m and under his control to run in and over the fields which he had rented to the plaintiffs to be cultivated in corn. In an answer and counterclaim the defendant alleged that the plaintiffs agreed in the rental contract to look after and attend to defendant's cattle, but that they failed to carry out their contract in that they neglected, failed, and refused to look after the cattle and negligently permitted them to run in one of the fields of corn by failing to keep the fences repaired and the gates and gaps closed. He alleged that the cattle destroyed 393 bushels of corn, and he sought to recover on his counterclaim the sum of $235.80, the value of his portion of the destroyed corn. The defendant also alleged that he and the plaintiffs entered into an agreement whereby the extent of the damages was to be determined by arbitration; that they appointed three men who agreed to act as arbitrators, and who went upon the land and fixed the amount of

corn destroyed at 393 bushels. A demurrer to the counterclaim was sustained, and the defendant filed an amended answer and counterclaim in paragraph 2 of which he sought to recover $235.80, the value of his share of the corn destroyed by reason of the carelessness and negligence of the plaintiffs in permitting the gates and gaps to be left open, and the further sum of $175, damages for the alleged breach by plaintiffs of other provisions of the rental contract. In paragraph 3 of the amended answer and counterclaim the defendant again set forth the arbitration agreement, and stated: "Whereupon said arbitrators did go upon said land and carefully inspected the same, made their figures, thereupon, and fixed said damages to said cornfield of the sum of 393 bushels. Which sum as so fixed by said board would be 131 bushels lost by the defendant, and 262 bushels lost by the plaintiffs. And further reported that said corn was of an inferior quality; and did report to the parties hereto on or about the ———— day of December, 1947."

The court sustained a demurrer to paragraphs 2 and 3 of the answer and counterclaim, and overruled the demurrer to that part of the answer which was defensive only.

The court correctly sustained the demurrer to paragraph 3. It is difficult to spell out of the pleadings the exact nature of the alleged arbitration agreement, but it is clear that it was not intended to conform to the requirements of section 451 of the Civil Code of Practice or Chapter 417 of the Kentucky Revised Statutes relative to arbitration and award. If valid in its inception, it was a common law arbitration agreement and was revocable at any time before a final award was made. Jones v. Jones, 229 Ky. 71, 16 S. W. 2d 503. The bringing of a suit by one of the parties is a revocation of the agreement. Peters' Adm'r v. Craig, 36 Ky. 307, 6 Dana 307. It is not clear from appellant's pleadings just what authority was conferred upon the arbitrators by the oral agreement, but apparently they were authorized merely to ascertain the amount of corn damaged or destroyed and were without authority to fix the liability or to determine the pecuniary damage. In a dispute over the loss of or damages to property, an

award by arbitrators is void for uncertainty where the value in money is left open for dispute. Coghill v. Hord, 31 Ky. 350, 1 Dana 350, 25 Am. Dec. 148.

The court sustained a demurrer to that part of paragraph 2 of the answer and counterclaim which alleged damages to the defendant's share of the corn caused by the carelessness and negligence of the plaintiffs. The ruling was based apparently on the theory that this was not a proper subject of a counterclaim under the provisions of section 96, subsection 1, of the Civil Code of Practice, which provides: ''Counter-claim, defined. A counter-claim is a cause of action in favor of a defendant against a plaintiff, or against him and another, which arises out of the contract, or transactions, stated in the petition as the foundation of the plaintiff's claim, or which is connected with the subject of the action.''

The court's ruling was erroneous. The subject of the action was the damage to the corn caused by the defendant's cattle. The plaintiffs alleged that the defendant negligently permitted his cattle to enter the field of corn, while the defendant counterclaimed on the theory that the plaintiffs, by their negligence, made the loss possible. The cause of action stated in the counterclaim certainly arose out of the transactions stated in the petition, and was connected with the subject of the action. The court, however, properly struck from paragraph 2 of the amended answer and counterclaim the allegations relative to the $175 item of damages resulting from plaintiffs' failure to perform their agreement to scatter 100 tons of lime and to remove or burn one lot of brush. This cause of action which the defendant attempted to prosecute as a counterclaim did not arise out of the transactions stated in the petition as the foundation of the plaintiffs' claim nor was it connected with the subject of the action.

The appellant objected to Instructions 1, 2, and 3 offered by the appellees and given by the court. The instructions were based on the theory that appellant permitted his cattle to run at large contrary to the statutes of Kentucky applicable to the locality involved making it unlawful to permit stock, including cattle, to run at large. The statutes referred to, KRS 259.010

et seq., apply only to livestock which are not confined by the owner on his premises, but are permitted to roam at large beyond the limits of his land. The instructions of which complaint is made followed the instructions found in Stanley on Instructions, section 71, which were approved in Wigginton & Sweeney v. Bruce's Guardian, 174 Ky. 691, 192 S. W. 850, but in that case a horse was off its owner's premises and was roaming at will on a public highway. In the present case the cattle merely went from one field on the owner's farm to another. There was neither pleading nor proof that they were running at large in violation of the statutes, commonly known as the Stock Law, and it was error to refer to the statutes in the instruction.

It is argued that the verdict is excessive, but, since the evidence may be different on another trial, that question, as well as all others not passed upon, is reserved.

The judgment is reversed for proceedings consistent herewith.