Thomas Ray DAVIDSON, Appellant,

v.

Adolph Paul VOGLER, Appellee.

Court of Appeals of Kentucky.

March 1, 1974.

Joseph J. Leary, William M. Johnson, Frankfort, for appellant.

A. James Higgs, Jr., Dailey & Fowler, Frankfort, for appellee.

CARL D. MELTON, Special Commissioner.

This is an action by appellant, Thomas Ray Davidson, for personal injuries sustained in an automobile accident which occurred in the City of Frankfort, Kentucky on November 10, 1969.

At the conclusion of all the evidence at the trial, the trial court directed a verdict in favor of the appellant on the issue of liability alone and submitted the case to the jury for assessment of damages after instructing them in accordance with appellant's tendered instructions, except that the trial court refused to give an instruction authorizing the jury to award damages for loss of wages.

The jury thereafter returned a verdict in favor of appellant for $1,524.48, of which $1,000.00 was for pain and suffering and $524.48 was for medical expenses. No award was made for permanent impairment of appellant's power to earn money.

On this appeal, the four assignments of error may be briefly stated as follows: (1) the verdict was inadequate; (2) the jury erred in the assessment of the amount of the recovery and the verdict is contrary to the evidence and law; (3) the trial court erred in admitting into evidence the testimony of appellant relating to wages received by him from his employer as compensation for lost time; and (4) the trial court erred in refusing to instruct the jury upon the issue of lost wages.

Appellant's injury was diagnosed as a cervical strain or what is commonly called

a "whiplash" injury, and his testimony was the most favorable evidence presented relating to the severity and duration of his pain and disability. He testified that Dr. Long prescribed pain pills for him to take during the evening of the date of the accident but that they did little to relieve his pain; that on the morning following the accident Dr. Long admitted him to the hospital where he was placed in traction; and that due to the pain which continued following his discharge from the hospital some three days later, it was necessary for him to take off from his job where he was a manager for a finance company on all or parts of each day for a period of about a month.

Appellant further testified that again during August and September of the year following his injury the pain bothered him to some extent which necessitated his taking off from his job for an additional period of thirty days; that upon the advice of his orthopedic surgeon since January of 1970 he had regularly slept on a felt mattress on top of a board in order to relieve himself of pain; and that he had been bothered with pain from time to time, usually in the evenings, over a period of more than eighteen months from the date of the accident and that he was still experiencing some pain at the time of the trial.

■ If the jury accepted the appellant's testimony as to the severity and duration of the pain which he endured, the $1,000.00 awarded for pain and suffering would appear to be inadequate. However, the jury was not bound to accept as the absolute truth the testimony of either the appellant or of his doctor relating to appellant's claimed pain and suffering or permanent disability. Thompson v. Spears, Ky., 458 S.W.2d 1 (1970).

The testimony of appellant's own orthopedic surgeon, Dr. William K. Massey, as well as that of Dr. T. R. Miller, another orthopedic surgeon who examined appellant on behalf of appellee, was that they found no objective evidence of any injury received by the appellant or of any pain of which he complained. Then too, the jury had before them the appellant's own testimony which tended to establish that the pain and suffering endured by him was only nominal and that he in fact suffered no permanent disability or permanent impairment of his power to earn money.

Appellant admitted under cross examination that he did not consult either of his doctors for treatment of his pain after December of 1969 or the first month or two of 1970; that none of the time missed from his employment occurred upon the advice of his doctors except for the three days when he was confined in the hospital; and that he continued to pursue his hobbies of hunting and fishing to some extent, as well as coaching a Little League baseball team during the 1970 season.

■ Since the jury had the opportunity to observe the appellant give his testimony and to hear first-hand all of the other evidence in arriving at their verdict, they could have believed that appellant grossly exaggerated the extent of his injuries and the amount of pain which he suffered. In any event, we cannot say that the jury's award was so small and in variance with the facts of the case as to indicate that the verdict was influenced by passion and prejudice.

Since the jury did not award appellant anything for permanent impairment of his power to earn money, appellant's further contention is that the jury erred in the assessment of the amount of the recovery and that the verdict was contrary to the evidence and the law. He argues that "where there is uncontradicted evidence of a permanent injury, the amount of the award is left to the discretion of the jury, but apparently there must be some award for this item by the jury even if it is only nominal" and cites the case of Gretton v. Duncan, 238 Ky. 554, 38 S.W.2d 448, as authority for such proposition. His conten-

tion, however, is without merit and fails for two reasons:

First, in the case before us the evidence is not uncontradicted that appellant suffered a permanent injury. Although Dr. Massey testified that appellant had some permanent impairment to the body as a whole not exceeding five per cent, he conceded that any permanent impairment suffered by the appellant was restricted to predilection for re-injury and that if appellant doesn't get re-injured, then he would not have any such impairment. On the other hand, Dr. Miller testified that he found that appellant had no permanent disability resulting from the accident and that there was no predilection for re-injury present in the appellant.

■ Secondly, we do not construe the holding in Gretton v. Duncan, supra, as authority for the proposition stated by appellant. In that case we said that " * * * where permanent injury is alleged and shown, permanent impairment of power to earn money follows as a matter of course. To what extent is a question for the jury to be determined by the application of their common knowledge and experience to the facts and circumstances of the case", but we never held that the jury must make an award therefor in at least some amount. On that point of the case, we were merely saying that in an action for personal injuries neither an allegation nor proof of a specific pecuniary loss is indispensable to a recovery for permanent inpairment of power to earn money. Cf. Thompson v. Spears, supra.

Appellant's last two assignments of error are (1) that the trial court erred in admitting into evidence the testimony of appellant relating to wages received by him from his employer as compensation for lost time, and (2) that the trial court erred in refusing to instruct the jury upon the issue of lost wages. Since these two assignments of error each involve a common question, namely, the application of the collateral source doctrine, both are grouped together for our consideration.

In the case of Rankin v. Blue Grass Boys Ranch, Inc., Ky., 469 S.W.2d 767, decided a few days after the trial of appellant's case, the substance of our holding was that payments made to a personal injury claimant by his employer because of the claimant's legal entitlement to them reduces his claim for lost wages but that workmen's compensation or gratuitous payments by the employer do not. We also said:

"Whether the arrangement between Rankin and his employer was of such nature as to render the payment of wages a legal obligation is a law question for the trial judge. If the evidence generates a fact issue as to whether all or a part of the payments to Rankin by his employer were made because of a legal obligation of the employer to pay them, then a special interrogatory shall be submitted to the jury requiring a resolution of that fact issue."

The particular testimony which appellant contends was erroneously entered into evidence was admitted over his objection and was elicited from appellant upon cross examination. It consisted of appellant's being asked whether it was true that he hadn't actually lost any pay for any of his time, to which the appellant answered: "No sir, I haven't lost any. The company paid me."

Since the question was not specifically raised in Rankin, we did not discuss to what extent, if any, payments of "sick pay" by an employer to a personal injury claimant pursuant to a contractual arrangement between the employer and employee would reduce the employee's claim for lost wages. Similarly, at appellant's trial, no evidence was admitted or offered which directly related to the particular subject. However, we note from the pretrial deposition that the appellant testified that the reason he did not suffer any loss in wages

for time lost from his work was because of his employer's paying him for "sick days" which he had built up, figured on the basis that he got one sick day for each month of this employment.

It is now apparent to us that if the general principle enunciated in Rankin be literally construed, then payments of sick pay in such instances would operate to reduce the injured employee's claim for lost wages. In a discussion of the law applying to contracts between employers and employees which compensate employees a certain number of days each year for sick leave and vacation, in 22 Am.Jur.2d, Damages Sec. 208, p. 291, it is stated: "Where payment is made by the employer pursuant to such a contract, the cases are nearly unanimous that the tortfeasor cannot deduct these payments from the total recovery. Any amounts paid to the plaintiff employee pursuant to one of these contract plans should not be deducted from his recovery from the tortfeasor, because the right to payment was earned as a part of the employee's compensation prior to the injury."

We believe that the foregoing expression of the general rule is both sound and logical; hence, our holding in Rankin is modified to the extent that the rule expressed therein shall not apply to payments by an employer for sick pay and vacation pay pursuant to a contract of the type above mentioned. If this position were not taken, then clearly the tortfeasor would receive a "windfall" to the substantial detriment of the injured party in many instances, as the injured party would thereafter be deprived of exercising a valuable vested right, i. e., the right to use sick days or vacation time in the future which accrued to him prior to the injury and to receive pay therefor.

In the trial of a personal injury case, we believe that the propriety of admitting evidence relating to the claimant's receiving compensation from his employer

for lost time is limited (1) to circumstances coming within the Rankin rule, as herein modified, or (2) to the circumstances where evidence of malingering on the part of the claimant is substantiated by some other competent evidence, evidence relating to such compensation being admissible then for the limited purpose of showing malingering on the part of the claimant. Cf. Hellmueller Baking Company v. Risen, 295 Ky. 273, 174 S.W.2d 134.

Since the record does not reflect that the evidence relating to appellant's receiving pay from his employer for lost time was admitted for the limited purpose of establishing malingering on the part of the appellant and the trial court made no determination as to whether the evidence generated a fact issue such as to bring the case within the modified Rankin rule, we concur in appellant's contention that the trial court erroneously admitted into evidence for the jury's consideration the appellant's testimony relating to wages received by him from his employer as compensation for his lost time.

We do not find that the erroneously admitted evidence under the facts of this case alone constitutes prejudicial error but inasmuch as the trial court made no determination as to whether the arrangement between the appellant and his employer was of such nature as to require that the claim for lost wages be reduced by the amount of the wages which were paid by his employer, we are unable to say that the jury should not have been instructed upon the issue of lost wages claimed by appellant. Thus, it is our opinion that the judgment appealed from should be reopened for a new trial on the issue of lost wages only.

Upon the new trial, should the appellee again seek to put into evidence testimony relating to wages received by appellant from his employer as compensation for lost time, the trial court should conduct a hearing out of the presence of the jury relating to the arrangement between appellant and

his employer as to the basis of the employer's payments to the appellant for his lost time and make its findings at the conclusion thereof in accordance with this opinion. However, the trial court could provide by order that such hearing be conducted in advance of trial, either orally or upon depositions.

Wherefore, the judgment is affirmed in part and reversed in part for further proceedings consistent herewith.

All concur.