Helen June McVEY and Harold G. McVey, Appellants,

v.

Robert S. BERMAN, M.D., Appellee.

No. 91–CA–0064–MR.

Court of Appeals of Kentucky.

July 10, 1992.

---

Udell B. Levy, Theodore L. Mussler, Jr., Mussler & Associates, Louisville, for appellants.

Ronald L. Green, Steven G. Kinkel, James B. Cooper, Boehl Stopher Graves & Deindoerfer, Lexington, for appellee.

Before LESTER, C.J., and HAYES and JOHNSON, JJ.

JOHNSON, Judge.

In this case, Helen and Harold McVey (appellants) sued Robert Berman, M.D. (appellee) for damages for medical malpractice. The jury found that, in the course of a surgery performed on Mrs. McVey's abdomen, Dr. Berman negligently caused some damage to a nerve or nerves in Mrs. McVey's left leg. The jury awarded damages to Mrs. McVey for medical expenses, lost wages, and physical pain and suffering. The jury awarded $0.00 in damages for "permanent impairment of her power to labor and earn money" and for "mental pain and suffering."[1] Likewise, the jury awarded $0.00 in damages to Mr. McVey for loss of consortium. On appeal, the issues are whether the trial court erred in refusing to order the jury to reconsider its verdict; and whether the court erred again in denying the McVeys' motion for a new trial. The McVeys argue they should get a new trial because the amounts awarded are inadequate and inconsistent with the other findings of the jury. Finding no reversible error, we affirm the decisions of the trial court.

The first issue is whether the trial court should have ordered the jury to reconsider the verdict. The trial court acted properly in refusing to have the jury reconsider the verdict. *See Cooper v. Fultz*, Ky., 812 S.W.2d 497 (1991); *Spalding v. Shinkle*, Ky.App., 774 S.W.2d 465 (1989). In *Cooper*, the Supreme Court pointed out that a distinction exists between a situation where a jury leaves a verdict slot blank and one where the jury inserts "0" or its equivalent. In this case, as in *Cooper*, the jury consciously inserted "0." Such a verdict is not irregular or incomplete. *Cooper, supra.* That being the case, the trial court

---

1. The relevant instruction (as answered by the jury) reads as follows:

INSTRUCTION NO. 2

If you have answered Interrogatory No. 1B "yes", you will determine from the evidence and award to the Plaintiff, Helen June McVey, such sums in damages as you believe will fairly and reasonably compensate her for:

| | |
|---|---|
| (1) Past medical and hospital expense, not to exceed $2,298.35, the amount claimed. | $ 2,298.35 |
| (2) Lost wages, not to exceed $7,765.60 | $ 400.00 |
| (3) Permanent impairment of her power to labor and earn money, if any, not to exceed $82,004.36 | 0 |
| (4) Physician (sic) pain and suffering. | 10,000.00 |
| (5) Mental pain and suffering. | 0 |

**448**

was correct in not ordering the jury to reconsider the verdict. Where the verdict is inadequate and contrary to the evidence, the plaintiff's remedy lies in a motion for a new trial. *See Cooper, supra; Spalding, supra.*

■ The next issue is whether the trial court erred in denying the motion for new trial. The McVeys insist that the evidence in their favor was overwhelming, and that we should therefore reverse the decision of the trial court and remand for a new trial. However, our only function in reviewing the denial of a motion for new trial is to decide whether the trial judge abused his discretion. *See Davis v. Graviss,* Ky., 672 S.W.2d 928 (1984); *Spalding, supra.* The decision of the trial judge is presumptively correct. *Davis, supra; Prater v. Arnett,* Ky.App., 648 S.W.2d 82 (1983). Thus, we will not reverse the decision of a trial court unless that decision is clearly erroneous. *Davis, supra; Prater, supra.*

We have reviewed the record and find the McVeys' arguments unconvincing on the disputed points. As has been stated before, "the jury was not bound to accept as the absolute truth the testimony of either the appellant or of [her] doctor[s] relating to appellant's claimed pain and suffering or permanent disability. [Citation omitted.]" *Davidson v. Vogler,* Ky., 507 S.W.2d 160, 162 (1974); *See also, Carlson v. McElroy,* Ky.App., 584 S.W.2d 754 (1979). Likewise, the proof as to Mr. McVey's claim for loss of consortium and Mrs. McVey's claim for lost wages did not mandate an award of damages by the jury.

■ In short, the testimony of the McVeys and of the various doctors does not compel the results which they seek. There was testimony from the doctors that nerve injuries usually heal in time. Mrs. McVey admitted that she was capable of getting about and that her leg had in fact gotten better over time. Whether she suffered as much as she claimed was a matter within the discretion of the jury. *See Davidson, supra.* That being so, we must hold that the trial court did not abuse its discretion in refusing to overturn the jury's decision regarding lost wages and permanent im-

pairment of power to labor and earn money.

Similarly, the testimony regarding Mr. McVey's claim for loss of consortium does not compel a new trial. For example, the entire extent of Mr. McVey's testimony regarding his damages for loss of consortium was as follows:

Q10 Now, there has been a lot of testimony already about the most intimate aspects of your relationship with your wife [having reviewed the testimony, we (the Court of Appeals) would disagree with this statement], and I don't want to get into that. What things did you and Helen like to do before the surgery by Dr. Berman?

A Well, she's testified before that we danced. Now, I would like to say that is square dancing, that's not this slow moving dancing, which involves more physically (sic) movements. We played ball, we hunted some and we fished some, and we did a lot of work.

Q11 A lot of work where?

A On the farm.

. . . .

Q12 I'm sorry, I think you were testifying about the things around the farm, if you'll explain that to the jury.

A I think that most people in here are familiar with raising tobacco, some may not be, but some are. And, we, I think that it was mentioned before that we leased, but we don't lease, we sharecrop. And, everybody that has raised tobacco understands the fact that your wife is a part of that as well as myself, and there's times that she has to go pick up parts during the day when I tear them up basically of a night. And, she also, she pulled plants, she set tobacco, she topped tobacco, she suckered tobacco, and I might add that she could cut several sticks in a day's time, too, that she is no longer able to do this. She's also helped pitch hay, she's taken care of the cattle. In my regular job I'm required to travel occasionally, and all of that was left for her to tend to while I was gone.

Q13 Has she been able to do any of that since the surgery that was performed by Dr. Berman?

A No, sir.

. . . .

Q25 Why don't you and Helen sleep in the same bed?

A I can't touch her, she's afraid I'll hurt her leg, or roll over on her leg, or whatever, while we're sleeping.

Q26 Now, you talked about dancing, and playing ball, and fishing, hunting and that type of thing that you all did before she was injured. How has this affected you and how has this affected your relationship with Helen?

A Well, it's been a drastic change, we no longer can do those things. I think dancing was probably one of the things we really enjoyed the most. She's a lousy shot, but I did buy her a shotgun that wouldn't kick her so she could go shoot. Everybody in the family has had to readjust. It's not the same any more. And, to really tell you exactly what kind of adjustments you have to make, I can't do it.

Q27 How about your relationship, not intimately, but how about the two of you?

A We get along fine. We've never had a problem with anything like that.

Q28 Has there been any change in your relationship since she was injured?

A Sure.

Q29 Tell the jury about that.

A Well, she's already testified to it, I'd just as soon not talk about it.

MR. LEVY: Okay, then I won't have any further questions.

 Whatever else this testimony may be, it is not so clear and convincing (even in conjunction with the other testimony in the case) as to demonstrate that the trial court erred in not granting a new trial. Despite appellants' assertions to the contrary, the opinion in *Horn v. Hancock*, Ky.App., 700 S.W.2d 419 (1985) (overruled by *Cooper*, 812 S.W.2d at 501), does *not* say that a verdict which awards damages to an injured wife but denies recovery to her husband for loss of consortium is facially inconsistent. In fact, the court quite clearly stated in *Horn* that it was *not* addressing that issue. *See Horn*, 700 S.W.2d at 420. Subsequent to *Horn*, however, this court did state that a person's tortious injuries may be too slight to impact the spouse's right of consortium. *Transit Authority of River City v. Vinson*, Ky.App., 703 S.W.2d 482 (1985). Thus, even though the jury believed that Mrs. McVey endured some pain and suffering, they were not required to believe that she was incapable of rendering services and companionship to her husband in a normal manner. And even if Mrs. McVey did fail to render services and companionship to her husband, the jury was free to believe that such failure was not caused by Dr. Berman's negligence. That being the case, the decision of the trial court must be affirmed.

 The last issue is whether Mrs. McVey is entitled to two separate awards for pain and suffering. Having been granted $10,000 for *physical* pain and suffering, she now argues that she should also receive money for *mental* pain and suffering. The courts of this Commonwealth have held many times that a plaintiff who recovers the medical expenses incurred in treating an injury is also entitled to damages for the pain and suffering which accompany the injury. *See e.g. Wall v. Van Meter*, 311 Ky. 198, 223 S.W.2d 734 (1949). Moreover, a plaintiff is entitled to recover for *all* of her pain and suffering caused by a defendant—both physical and mental suffering merit recovery. *See e.g. Warfield Natural Gas Co. v. Wright*, 246 Ky. 208, 54 S.W.2d 666 (1932). Nevertheless, it has never been the rule that every plaintiff who suffers physically is entitled to separate awards for physical and mental pain. *See* 1 Osso W. Stanley, *Instructions to Juries in Kentucky* § 313 (1957) (instruction allowing recovery for physical and mental pain and suffering, *if any of either*, approved by numerous Kentucky cases). Therefore, we hold that the trial court did not err in refusing a new trial on this issue.

 The injury incurred by Mrs. McVey is nothing like the injuries discussed in the

cases cited by her attorney. For example, the plaintiff in *Wright, supra,* was horribly burned and disfigured and left incapable of caring for himself. It was beyond cavil that, in addition to intense pain, he was afflicted with the anxiety and humiliation attendant upon living as a disfigured invalid who was absolutely dependant upon the care of others.[2] *Wright, supra.* In contrast, the jury in this case apparently believed that Mrs. McVey had no such worries. She admitted that she was capable of carrying on the ordinary routines of daily living. She granted that she still engaged in sexual relations with her husband. Whether she was inhibited in these matters to the extent that she claimed was a matter well within the discretion of the jury. *See Davidson, supra.*

Nevertheless, we hold that the trial court did err in instructing the jury to award separate amounts for physical and mental pain and suffering. In fact and in law, these items are likely to overlap and to have elements that are indistinguishable. *See Fowler v. Carrollton Public Library,* 799 F.2d 976 (5th Cir.1986)[3]; *cf. Broadway Coal Mining Co. v. Robinson,* 150 Ky. 707, 150 S.W. 1000 (1912) (Compensation for pain and mental suffering set out as one element of damage in personal injury actions); *Paducah Traction Co. v. Burradell,* 31 Ky.L.Rptr. 1052, 104 S.W. 709 (1907); *South Covington & C. St. Ry. Co. v. Nelson,* 28 Ky.L.Rptr. 287, 89 S.W. 200 (1905); *Lexington & E.R. Co. v. Crawford,* 155 Ky. 723, 160 S.W. 267 (1913); and *Spencer v. Webster,* 305 Ky. 10, 202 S.W.2d 752 (1947) (It is error to include in instructions on measure of damages the element of disfigurement of plaintiff's face). We have found no cases approving such instructions. Thus, we believe it will be better for trial courts to give a unified instruction on those damages which may be awarded for physical and mental pain and suffering. *Cf.* 2 John S. Palmore & Ronald W. Eades, *Kentucky Instructions To Juries* Section 39.02 (1989).[4] Of course, it may be appropriate in many cases to give an additional separate instruction on *future* pain and suffering. A jury is not likely to confuse the past with the future and give a double recovery thereby. Such instructions can be "fleshed out by counsel in their closing arguments if they so desire." *Cox v. Cooper,* Ky., 510 S.W.2d 530, 535 (1974). In this case, however, we believe the error was harmless, and in any event, the appellants are estopped to take advantage of error which was present in

2. In *Wright,* the Court described the plaintiff's injuries in the following way:

He lost his sight, one eye being burned out and the other having light perception only, the edges of his eyelids were burned off so that he cannot entirely close his lids; the tear ducts do not drain through the internal passages of the eyes but pour out upon his cheeks; wind, light, dust and foreign matter irritate and pain his eyes; flies and insects are attracted to them. The scars upon his face are deep and severe and a constant source of irritation and torment; the growth of his beard and shaving pains and irritates his face, which festers, causing constant suppuration; part of his ears were burned off and a part of his nose; his mouth was so deeply and severely burned as to draw and greatly contract the muscles and flesh; his wrists, hands and fingers are stiff, straight, charred stubs; he has no flexibility at all in his fingers; is unable to dress or undress himself or to attend the functions of nature; without assistance he cannot feed himself; his nights are restless, his sleep broken; most pathetic of all is that his general health is good and the chances are that he will live out his natural expectancy.

3. In *Fowler* at page 982 the Court states as follows:

Fowler's brief cites in support of the jury award for pain and suffering evidence that equally betokens mental distress. Fowler is described in the brief as distraught, shaking and weak, deathly afraid, crying easily, and in a "physical state of shock," depressed, lacking energy and "not in good health." She allegedly lost her energy and was not able to concentrate on things she had enjoyed doing in the past. It is not possible logically to distinguish which of these manifestations proves pain and which proves mental anguish.

4. Sec. 39.02 Personal injury; pain and suffering

If you find for P you will determine from the evidence and award him a sum of money that will fairly and reasonably compensate him for whatever physical or mental suffering you believe from the evidence he has sustained or is reasonably certain to endure hereafter as a direct result of [the accident] [his injuries].

the instructions tendered by them, and objected to by appellee. *See Wright v. Jackson*, Ky., 329 S.W.2d 560 (1959).

The judgment of the trial court is affirmed.

All concur.