**Sean V. MCGINNIS, Plaintiff,**

v.

**Raymond A. TAITANO, Defendant.**

**No. Civ.A. 3:96CV–261–S.**

United States District Court,
W.D. Kentucky.

April 20, 1998.

matter. On January 30, 1998 the court granted the unopposed motion (DN 111). Subsequently, the defendant, Raymond A. Taitano ("Taitano"), moved to vacate the order and for leave to belatedly file a response in opposition to the motion. Trial of this matter was continued due to the illness of McGinnis. The court determined that, in light of the continuance, the court would accept and consider additional briefs on the issue. Having considered the matter, the court declines to vacate its previous order granting the motion *in limine.*

The accident giving rise to this action occurred in Germany. The parties are both former members of the United States military. McGinnis is a resident of California. He brought suit in Kentucky where personal jurisdiction could be obtained over Taitano. Taitano is a Kentucky resident. Liability is not disputed in this case. The issue for trial is the extent of McGinnis' injuries as a result of the accident. Taitano contends, in part, that McGinnis is malingering.

The issue presently before the court is whether Taitano may introduce evidence of collateral source payments received by McGinnis. Taitano's argument in support of admissibility is two-fold. First, he contends that German law applies to this issue since the accident occurred there. Taitano asserts that collateral source evidence is admissible under German law. Second, he suggests that, in the event Kentucky law applies, collateral source evidence is admissible where it is offered to show malingering on the part of the plaintiff. We will address these contentions *seriatim.*

Mark S. Fenzel, David J. Kellerman, Middleton & Reutlinger, Louisville, KY, Robert M. Juskie, Wingert, Grebing, Anello & Brubaker, San Diego, CA, for Plaintiff.

Carl D. Frederick, Weiss, Frederick, Willett & Haynes, Louisville, KY, Joseph C. Rust, Kesler & Rust, Salt Lake City, UT, for Defendant.

### MEMORANDUM OPINION AND ORDER

SIMPSON, Chief Judge.

This matter is before the court on motion of the plaintiff, Sean V. McGinnis ("McGinnis"), for an order *in limine* precluding the defendant from introducing evidence of collateral source payments in the trial of this

Taitano has cited no authority establishing that German law applies on this issue. " ... [F]ederal courts are *required* to apply state choice of law rules only when the issues before it are governed by state substantive law under *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). *See Klaxon [Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941) ] ... " *Barkanic v. General Administration of Civil Aviation of the People's Republic of China,* 923 F.2d 957, 960 (2d Cir.1991) (emphasis in original). As noted in

*Jackson v. City of Cookeville,* 31 F.3d 1354, 1359 (6th Cir.1994), "The collateral source rule is a substantive rule of law that bars a tortfeasor from reducing damages owed to a plaintiff by the amount of recovery the plaintiff receives from sources that are collateral to the tortfeasor."

Under Kentucky law governing conflict of laws problems in tort actions, any significant contact with Kentucky is sufficient to allow Kentucky law to be applied. *Bonnlander v. Leader National Insurance Co.,* 949 S.W.2d 618, 620 (Ky.App.1996) (citing *Arnett v. Thompson,* 433 S.W.2d 109 (Ky. 1968); *Foster v. Leggett,* 484 S.W.2d 827 (Ky.1972); *Wessling v. Paris,* 417 S.W.2d 259 (Ky.1967)). The court noted in *Arnett,* 433 S.W.2d at 113 that

> Upon further study and reflection the court has decided that the conflicts question should not be determined on the basis of a weighing of interests, but simply on the basis of whether Kentucky has enough contacts to justify applying Kentucky law. Under that view if the accident occurs in Kentucky ... there is enough contact from that fact alone to justify applying Kentucky law. Likewise, if the parties are residents of Kentucky and the only relationship of the case to another state is that the accident happened there (as in Wessling), there is enough contact with Kentucky to justify applying our law.

In *Foster v. Leggett,* 484 S.W.2d at 829 the court explained

> When the court has jurisdiction of the parties its primary responsibility is to follow its own substantive law. The basic law is the law of the forum, which should not be displaced without valid reasons ... We are now reaffirming our position taken in Wessling v. Paris, supra, that if there are significant contacts—not necessarily the most significant contacts—with Kentucky, the Kentucky law should be applied.

The context in which the collateral source question has arisen here is unique. Unlike the *Arnett* case, only one party to the action resides in Kentucky, and he did not reside here at the time of the accident. In 1994, Taitano had no affiliation with the Commonwealth. McGinnis has availed himself of the

courts here, and has found Taitano, a Kentucky resident, amenable to suit here. However, there is no valid reason for applying the law of Kentucky instead of the law of the situs of the accident. Neither party had a connection to Kentucky at the time of the accident. It is mere happenstance that the defendant now resides here. His presence in Kentucky bears no connection to the case. The law of the situs of the accident is appropriate under some circumstances. We find that this is such an instance.

Further, as will be explained below, the court has determined that German law and Kentucky law are in accord on the point of law now before us. Therefore, even if the conflicts analysis is flawed, the Court's ultimate decision to preclude evidence of collateral source payments would remain unchanged.

We reject the assertion of Taitano that collateral source evidence is admissible as evidence of malingering in this case. The Kentucky Court of Appeals stated, in pertinent part, in *Transit Authority of River City v. Vinson,* 703 S.W.2d 482, 484–5 (Ky.App. 1985)

> The courts of this Commonwealth consistently hold that evidence of income from collateral sources is not admissible at trial to reduce the amount of a damage award *Hellmueller Baking Company v. Risen,* 295 Ky. 273, 174 S.W.2d 134 (1943), and cases cited therein ... *Rankin v. Blue Grass Boys Ranch, Inc.,* 469 S.W.2d 767 (Ky.1971), created a limited exception to the collateral source rule ... The *Rankin* exception was later modified in *Davidson v. Vogler,* 507 S.W.2d 160 (Ky.1974) ... *Davidson* created a second limited exception to the rule, as follows:
>
> > In the trial of a personal injury case, we believe that the propriety of admitting evidence relating to the claimant's receiving compensation *from his employer* for lost time is limited (1) to circumstances coming within the Rankin rule, as herein modified, or (2) to the circumstances where evidence of malingering on the part of the claimant is substantiated by some other competent evidence,

evidence relating to such compensation being admissible for the limited purpose of showing malingering on the part of the claimant. *Id.* at 164 ...

Contrary to appellants' contention, *Rankin* and *Davidson* do not stand for the proposition that social security payments, disability and insurance benefits are admissible to establish malingering. In fact, our courts have long recognized that evidence of collateral source income to show malingering has little or no probative value. *Louisville & Nashville R. Co. v. Utz*, 299 Ky. 765, 187 S.W.2d 439 (1945). The United States Supreme Court considered and rejected this very same argument in *Eichel v. New York Central Rail Company*, 375 U.S. 253, 84 S.Ct. 316, 11 L.Ed.2d 307 (1963) ...

As noted by Taitano, McGinnis has retired from the Army, and receives disability payments. It appears clear from the *Vinson* case that evidence relating to such benefits is not admissible on the issue of malingering. Were Kentucky law to permit evidence of disability benefits on the issue, at the very least, a showing of some other competent evidence of malingering would be required. Taitano has suggested malingering, but no specific evidence supporting the theory is referenced in his memorandum.

Taitano has identified CHAMPUS payments of medical bills, Social Security disability benefits, and Veterans Administration disability benefits as collateral sources. The collateral source rule would preclude evidence of these benefits from the United States government. *See, i.e. In re Adventure Bound Sports, Inc.*, 858 F.Supp. 1192, 1208–09 (S.D.Ga.1994) (Social Security and Veterans Administration benefits); *Guyote v. Mississippi Valley Gas Co.*, 715 F.Supp. 778, 780–81 (S.D.Miss.1989) (CHAMPUS payment of medical expenses).

Taitano has made an additional motion seeking to file a reply to McGinnis' supplemental response memorandum. He seeks to clarify the German law on the collateral source rule. The court has requested and received additional materials on this issue. Therefore, further briefing is unnecessary and the motion will be denied as moot.

Fed.R.Civ.P. 44.1 states, in pertinent part, that "[t]he court, in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." The court's determination shall be treated as a ruling on a question of law. As noted in 9 *Charles A. Wright & Arthur R. Miller,* § 2444,

> The judge's freedom to engage in research gives the court maximum flexibility about the material to be considered and the methodology to be employed in determining foreign law in a particular case ... [O]ne of the policies inherent in Rule 44.1 is that whenever possible issues of foreign law should be resolved on their merits and on the basis of a full presentation and evaluation of the available materials. To effectuate this policy, the court is obliged to take an active role in the process of ascertaining foreign law.

Taitano provided the court a 1987 judge's opinion in a case which we find to be not only questionable due to its age, but factually distinguishable from the case at bar. The court instead relies upon the German Civil Code and its commentary, and, secondarily, upon a number of texts on German law in reaching the conclusion that evidence of government-funded (public sector) benefits would not be used to reduce the damages a tortfeasor would be required to pay in a German action.

In determining the manner in which a German judge would approach the collateral source issue, Nigel Foster's text entitled *German Legal System and Laws, 2d Ed.* (Blackstone Press 1996) is instructive:

> The general duty of a judge is to give form to the law when faced with specific legal problems and to decide what the law is in the case to [sic] hand. In order to achieve this the German legal system has provided the judiciary with codes of law and legislation which are supposed to be all-encompassing in that they can provide a solution for all possible situations. A judge is thus required to turn first to a code of other legislation in order to try and find a legal solution to a problem. If such a solution is not apparent, they may then interpret the

law along the following lines. In selecting and applying legislation the general rule is that the specific or specialist law overrules the general law.

Additionally, as in statutory construction in the United States, the judge will apply 1) *grammatische/Wortlaut/philologische*, the grammatical rules, which give words their literal meaning or attempt to respect the internal sense of the words in their common legal usage; and 2) *logische* (logical) and *systematische* (systematic) rules, which form a contextual rule requiring interpretation of provisions in the context of the system of rules or the provision as a whole. *Id.* at 63–64.

The more specific code sections are found in the Road Traffic Act (StVG) in which the operator of a motor vehicle is held strictly liable for any damage to persons or property that arises through the operation of the vehicle. The StVG refers to the more general legislation, the Civil Code (BGB), and, in particular, to § 843 with respect to damages. § 843, as translated for this court, states:

(1) If injury to body or health diminishes or removes the ability of the injured party to have gainful employ, or leads to increased needs, the injured party must be compensated by setting up a monetary annuity.

(2) The provisions of § 760 apply to the annuity. Circumstances will dictate whether the party liable for restitution must post a surety, and if so in what amount.

(3) The injured party may demand a lump sum in lieu of an annuity if there are substantial reasons for doing so.

(4) *The claim shall not be excluded for the reason that another person is required to support the injured party.* (Emphasis added).

A plain reading of the language of the code provision, as translated, appears to this court to preclude the defendant from seeking to reduce the damages owed by the amount of benefits received from a third party.

The Munich Commentary of the German Civil Code would appear to support this reading. The translation of the Commentary states, in pertinent part:

... [A]rticle 843, paragraph 4, states that in case of impairment of gainful employment, the claim for damages shall not be decreased by a third party's obligation to support financially the injured party. If contributions were made in this case to the claim for damages, then as a result financial support would actually benefit the tortfeasor. For this reason, taking into consideration the payment of a third party is out of the question ... If the third party is obliged to pay damages to the injured party, then the law often provides that the third party is to benefit from the claim for damages. With this the law expresses the fact that the claim for damages shall continue to exist in its entirety, without consideration of the damages paid by the third party ... The tortfeasor is first and foremost regarded as responsible for paying back the prejudice; he/she is "closer to" the damage than the third party ... The regulations presented in margin notes 101–103 are based on the idea that it is mainly the tortfeasor, rather than the third party, who shall be held liable ultimately to bear the damages. This is an idea that goes beyond the cases regulated by law.

(excerpts taken from §§ 101.dd, 102, and 104 of the Munich Commentary).

Two secondary sources, 11 *International Encyclopedia of Comparative Law (Torts)*, ch. 11: *Collateral Benefits;* Fleming; and *The German Law of Torts, 3d Ed.*, Markesinis (Claredon Press 1994), offer insight into the philosophy behind the code provisions. The German law seeks to protect two principles—first, that collateral benefits do not diminish tort liability, and second, that the injured party should be recompensed, but not make a profit. The German law attempts to accomplish this by permitting the injured party to recover the full value of the damages caused by the tortfeasor, and legislatively creating automatic subrogation (*cessio legis*) for the State and social insurance funds to recover third party benefits. This system ensures that neither the injured party nor the tortfeasor reaps a windfall.

In summary, we find, under both a plain language and a social policy analysis, that German law precludes the use of evidence of the receipt of government benefits to reduce damages owed by a tortfeasor. The court concludes, therefore, that evidence of McGinnis' receipt of CHAMPUS, Social Security, and Veterans Administration benefits must be precluded in the trial of this matter.

Motions having been made, and for the reasons set forth herein above and the court being otherwise sufficiently advised, **IT IS HEREBY ORDERED AND ADJUDGED** that the motion of the plaintiff, Sean V. McGinnis, for an order *in limine* precluding the use of evidence of collateral source payments in the trial of this matter is **GRANTED.** Our earlier order on this issue, DN 111, will remain in effect.

**IT IS FURTHER ORDERED** that the motion of the defendant, Raymond A. Taitano, for leave to file a reply brief for purposes of clarification. (DN 136) is **DENIED AS MOOT.**

**IT IS SO ORDERED.**