Joyce **LLOYD** et al., Appellants,

v.

Carma E. **LLOYD**, Appellee.

Court of Appeals of Kentucky.

March 31, 1972.

Eugene E. Siler, Jr., Williamsburg, for appellants.

Paul E. Braden, Sutton, Forcht & Braden, Corbin, for appellees.

PALMORE, Judge.

Brent Lloyd, an infant two years of age, and his father, Bob Lloyd, were injured while riding a power-driven lawn mower owned by Carma Lloyd, Bob's father and Brent's grandfather. They sued Carma Lloyd and Sears, Roebuck & Company, the supplier which had sold the machine to Carma. Bob's wife, Joyce, joined in the complaint and asserted a claim for loss of consortium, which was later dismissed for failure to state a cause of action. Sears settled and was let out. A jury awarded Brent $12,000 and Bob $5,000 against Carma. The trial court sustained Carma's motion for judgment n. o. v. as to Brent but denied it as to Bob. Everybody appeals, including Joyce.

Carma had purchased the riding mower in the spring of 1966. It had three gear settings, forward, neutral and reverse. On September 2, 1966, Bob and his family were week-end guests in Carma's home. When Carma left for work that morning Bob asked if there was anything he could do, and Carma suggested mowing the yard. Bob had operated the machine one day shortly after Carma had acquired it, but had merely driven around the yard with Brent riding and had not cut any grass. It had operated normally at that time. However, Bob's brother Bill Lloyd, a state police officer, cut part of the yard one day later on in the summer and had so much trouble with the mower's erratic jerking and lurching that he quit mowing and advised his father that the machine was dangerous to use and he should have it repaired.

In August, following the occasion on which Bill had cut the grass, Carma got in touch with Sears and requested it to repair the mower, but at the time of the accident in question the repairman had not yet come to get it.

Bob Lloyd had no knowledge of any difficulty with the machine and Carma made no mention of it when suggesting that he mow the lawn. Carma did not know Bob

was going to ride Brent on the mower, but he knew he had ridden Brent on it before..

The yard being mowed was level. After a period of some 20 minutes in which he cut an area 50 to 60 feet long and about 20 feet wide Bob backed the mower five or six feet and then put it in forward gear to cut one last swath. As it moved forward the front end jumped up, and in attempting to keep his balance Bob put his foot on the ground and fell or was thrown off the machine. By the time he was able to overtake it and rescue Brent both of them had been seriously cut through contact with the mower blades.

Both counsel and the trial court have approached this case from the standpoint of duties owed by one in control of real estate toward other persons using the property, and of course it is readily apparent that valid analogies can be drawn between principles applicable to the use of real property and those pertaining to the use of chattels. Basically, however, this is not a case in which it is necessary to inquire into such questions as whether Brent and Bob were invitees, licensees, or something else. They were not injured by reason of any defect in the premises, but by reason of a defect in a dangerous instrumentality furnished by Carma for the use of Bob upon the occasion in question. The principle to be applied is set forth in the Restatement (2d), Torts § 388 (1965):

"§ 388. Chattel Known to be Dangerous for Intended Use

One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous."

The point we wish to make clear in this connection is that it is of no particular importance whether Bob had been using the mower as a guest on the premises or as a borrower at some other place, so long as it had been provided to him for the use to which he was putting it when he was injured. But even if it be assumed that the duty owed him was that which a person in control of premises owes to a licensee, we find it to be substantially the same, because "the basic distinction between the duties of the possessor is that he owes an invitee the duty of *discovering* a dangerous condition, whereas he owes a licensee only the duty to warn him of a dangerous condition *already known* to the possessor." Mackey v. Allen, Ky., 396 S.W.2d 55, 58 (1965). The theory of the plaintiffs' case here is that Carma knew the machine was not working properly and for that reason was dangerous to operate, that Bob did not know and would have no way of discovering it except through using the machine, and that in providing the machine for his use Carma was therefore under a duty to warn him. It is our opinion that the evidence warranted submission of the case to the jury on that theory and that Carma was not entitled to a directed verdict or a judgment n. o. v. against Bob.

J. C. Penney Co. v. Mayes, Ky., 255 S.W.2d 639 (1953), and other cases cited for Carma which stand for the proposition that there can be no liability when the danger was or should have been obvious to the injured person are not in point.

With respect to Brent the answer is less clear. Had there been no reason for Carma to foresee that Bob would ride the little boy on the mower as he cut the

grass we might be persuaded that Carma owed no duty of care to Brent with respect to the machine. But we think foreseeability is the vital question. The duty of care extends "to those whom the supplier should expect to use the chattel—*or to be endangered by its probable use*," etc. (Emphasis added.) Restatement (2d), Torts, § 388 (1965). It is our opinion that the evidence justified a conclusion by the jury that Brent's presence on the machine while his father was operating it came within the scope of what Carma should have anticipated. In so holding, however, we do not suggest that the same would be true with respect to the seller or other supplier of the machine.

 Carma makes the further argument that Bob was negligent in having Brent on the mower while he was using it and that this negligence was the proximate cause of Brent's injuries. Assuming, without so holding, that Bob should not have taken the child on the machine, in that he ought to have foreseen the possibility of some kind of an accident in which the boy would fall off and get hurt, the fact that Brent might have a cause of action against Bob would not affect his rights against Carma. Regardless of Bob's negligence, if the accident resulted from a defect in the machine of which Carma was aware, Carma's negligence was a proximate cause of Brent's injuries. That which is reasonably foreseeable is not an independent, intervening cause. Lexington Country Club v. Stevenson, Ky., 390 S.W.2d 137, 141 (1965); Seelbach, Inc. v. Cadick, Ky., 405 S.W.2d 745, 750 (1966).

There is some merit in the argument that Bob was contributorily negligent in operating the machine with the child on it between his arms. But that was for the jury to say, particularly with respect to whether such negligence, if any, played a causal role in the accident.

Since the judgment was entered in this case our opinion in Kotsiris v. Ling,

Ky., 451 S.W.2d 411 (1970), has resolved the consortium question in favor of the wife's right of recovery. Hence the dismissal of Joyce Lloyd's claim was in error.

The judgment is affirmed on the appeal of Carma Lloyd; reversed on the appeal of Brent Lloyd with directions that a judgment be entered in accordance with the jury verdict; and reversed on the appeal of Joyce Lloyd with directions for further proceedings in accordance with this opinion.

EDWARD P. HILL, Jr., MILLIKEN, NEIKIRK and REED, JJ., concurring.