**BURKE ENTERPRISES, INC., Movant,**

v.

**Stanley MITCHELL, Respondent.**

Supreme Court of Kentucky.

Nov. 21, 1985.

John G. Crutchfield, Ewen, MacKenzie & Peden, PSC, Louisville, for movant.

John M. Longmeyer, Louisville, for respondent.

## OPINION OF THE COURT

This is an appeal from a judgment entered on a jury verdict in favor of respondent, Stanley Mitchell, in the sum of $17,955.76 for personal injuries he sustained while operating a two man, gasoline powered, post hole digger which he had rented from the movant, Burke Enterprises, Inc., d/b/a Burke Rental Center.

On September 12, 1980, Mitchell was in the process of building a backyard fence. A neighbor suggested he rent a post hole digger. He located the subject machine at Burke Rental Center ("Burke"), and went with his neighbor to get it.

The post hole digger was equipped with a slip or centrifugal clutch, engineered to cause the auger to stop turning in normal operation when it encountered an obstruction. Mitchell was unaware of this feature. Although Burke's employees were instructed to explain the operation of the slip clutch to renters, no such explanation was given to Mitchell.

Mitchell took the machine home and, after a minute or two of operation, the auger and pulleys quit running. He thought the V-belt on the machine was broken and reached down to check it. The machine started running again. Mitchell's hand was sucked into it and, as a consequence, a portion of his right thumb was torn off.

The accident occurred as a consequence of two factors. First, there was no guard on the V-belt to prevent an unknowledgeable user from coming in contact with the hazard. Second, Mitchell was not instructed in, and was unaware of, the operation of the slip or centrifugal clutch, which stopped the auger from turning in normal operation when apropos, and then permitted it to resume operation when no longer in contact with the obstruction. As a consequence, he was unaware that the machine would resume operation as it did.

Mitchell sued Ground Hog, Inc., the original manufacturer of the machine, Best Equipment Co., because its name tag was on the motor, and the movant, Burke Enterprises. The complaint included claims against the defendants of strict liability in tort, implied warranty and negligence. The charges against Burke included that it "negligently leased" the machine and that it "negligently failed to properly warn of the hazardous nature and dangerous propensities of the aforesaid two-man earth drill."

The machine was designed and manufactured by Ground Hog, Inc., between 1955 and 1965, without a guard over the pulleys and V-belt. The appellee, Mitchell, charged that Ground Hog, Inc., thus originally created the hazard. Burke purchased the machine in 1967, and in 1976 substantially rebuilt and significantly altered it. Still, no guard was put on the machine. Indeed, the original holes provided for mounting a guard if the owner decided to purchase one were obliterated in the rebuilding process.

The Products Liability Act, KRS 411.300, et seq. provided certain defenses to the manufacturer based on the time of manufacture, viz., the presumption the product was not defective five years after sale to the first consumer and eight years after the date of manufacture, the state of the art defense, and the subsequent material

alteration defense. With these in mind on the eve of trial Mitchell elected to settle with the manufacturer. He accepted $10,000 and executed a partial release "reserving" his claim against other defendants, meaning Burke. The release specified that the amount paid "will only partially satisfy the total amount of damages sustained" by Mitchell.

Best Equipment, named in the complaint, was not served and was not a party to this litigation. The case was tried against Burke only. The judgment against Burke was affirmed in the Court of Appeals. We accepted discretionary review.

The issues on discretionary review are: (1) the theory of liability as submitted to the jury in the instructions against Burke; (2) contributory negligence; and (3) Burke's claims to credits against the judgment for (a) the $10,000 previously paid by the manufacturer, Ground Hog, Inc., and (b) for $6,000 in benefits paid to Mitchell by his employer during the period he was disabled.

A mechanical engineer with many years experience in machine safety testified as an expert witness for Mitchell. He testified that the post hole digger was unsafe for operation because it did not have a guard over the V-belt and pulleys. He further testified that "with the guard off, ... the centrifugal clutch which causes the auger to start and stop when it meets resistance, might well cause the user to inadvertently stick his hand down there near the belt." He stated that this "would be a reflex action which can be anticipated and is well known to anybody who designs equipment."

## I. MOVANT INSISTS: (1) THAT THIS IS A "PRODUCTS LIABILITY ACTION;" (2) THAT AS A RENTAL AGENCY MOVANT QUALIFIES AS A DISTRIBUTOR OF THE PRODUCT; AND (3) IF THE PRODUCT WAS DEFECTIVE, MOVANT CAN HAVE NO GREATER LIABILITY THAN THE PRODUCT'S MANUFACTURER

In *Dealers Transport Co. v. Battery Distributing Co.*, Ky., 402 S.W.2d 441 (1966), we adopted strict liability in tort for a defective product as expressed in § 402A of the *Restatement (Second) Torts*. This is a "special liability" limited to manufacturers and distributors "engaged in the business of selling such a product." *Restatement (Second) Torts*, § 402A(1)(a). The movant is a commercial renter, therefore, not expressly covered by § 402A.

There are a number of cases from other jurisdictions which have extended strict liability in tort to "those who are in the business of renting products," under the theory that they "are often in an even more critical position than a retailer for affecting in a substantial way the instance of harm from damaging events due to defectively dangerous defects in products rental." *See Prosser and Keeton on Torts*, 5th ed., § 104, and cases cited therein. As yet, no Kentucky case has extended § 402A to commercial renters. We need not decide whether it would be appropriate to do so here because that is *not* the issue here, although the movant insists this is a "products liability" case, hoping thus to claim defenses in our Products Liability Act, *supra*.

Here, Mitchell's theory of liability against Burke, as developed through Mitchell's evidence at trial submitted in the instructions to the jury, premised liability on old-fashioned, garden variety common law negligence. Mitchell claimed that Burke failed "in the exercise of ordinary care" reasonable for a business such as Burke operated.

Movant claims it should only be liable if the manufacturer was liable. There are two reasons why this position is unsound. First, the manufacturer, Ground Hog, Inc., manufactured and sold this product thirteen or more years before the accident. Movant, however, rented the machine to Mitchell on the same day the accident occurred. The proof required to find fault against a manufacturer who parted with his product thirteen years before the accident and the proof required to find fault

against a commercial supplier in the business of renting products when it delivers to a customer a potentially dangerous machine for immediate use, are two different things.

In *Williams v. Fulmer*, Ky., 695 S.W.2d 411, 413 (1985), we stated:

"[W]hether a product is defective has different elements under negligence, under strict liability in tort, and under breach of warranty. Although the same evidence may prove one, two or all three theories, liability as defined under each is different and each carries different implications."

■ In *Williams v. Fulmer, supra,* the plaintiff could not avoid the one year tort statute of limitations for personal injury actions by labeling the case a claim for breach of warranty because the facts did not prove breach of warranty. In the present case, the movant cannot avoid liability for negligence by labeling the case a "product liability action" because the facts prove negligence.

Movant argues that it should not be held to a higher standard of liability than the manufacturer. But movant is held to a *different* standard of liability, not a *higher* one. If movant's liability were premised on "sale" of the product in its "original manufacture condition," KRS 411.340 might provide a defense as movant so vehemently contends. But movant is not a seller and the product was not in the same condition as when originally manufactured. The question of the liability of the original manufacturer, if any, is simply irrelevant. The movant is liable as a commercial renter for its negligence based on what its employees did or did not do, and not otherwise.[1]

■ The questions here relate to the nature and condition of the product at the time the movant rented it to the respondent and to whether there was a need to explain or warn of the features of the product which would make it dangerous to one unfamiliar with its use. As regards to these questions, the proof was sufficient to establish negligence.

■ The movant complains that the instruction to the jury, as a negligence instruction, was insufficient. The movant lost the right to make this argument by failing to object to the language of the instruction or to submit an alternative instruction on negligence which might be more suitable. CR 51(3).

The object of the rules is to require counsel to assist the court at arriving at proper instructions and, conversely, to prevent counsel from building reversible error into the case by a general or misleading objection.

Movant's counsel tendered no instructions. His argument was that "[n]o instructions are appropriate." His objections were that the Products Liability Act applied and the instructions did not supply movant with the defenses that would have been available to the manufacturer, Ground Hog, Inc., had it been a party still in the case.

Movant starts out by claiming he "didn't do" any of the things listed in KRS 411.-300(1), which defines the parameters of the Products Liability Act, and then asks for instructions under sections of the Act which do not relate to the facts of this case.

The instruction given subjected Burke to liability only if it furnished the equipment in circumstances where "in the exercise of ordinary care" it "should have anticipated a substantial likelyhood (sic.) that the post hole digger, without guards placed upon its moving parts" might injure a person "exercising ordinary care for his own safety," "while using the post hole digger for its entended (sic.) purpose."

Movant complains that the instruction should have followed more closely the language found in *Palmore's Instructions to*

1. The evidence showed that the movant rebuilt the product without a guard in 1976. If as movant insists, its liability were to be limited to the same as a seller under § 402A, at this point, four years in time before the accident, none of the defenses expressed in KRS 411.310 and KRS 411.320 of the Products Liability Act would apply to shield the movant in any event.

*Juries*, Vol. 2, § 24.04. Perhaps if counsel had asked the trial court to do so, the court would have complied. In the absence of any such request, there is nothing for us to discuss in this respect.

The trial court expressly stated that it was trying to follow the policy of our Court that instructions should set out the "bare bones" of liability, leaving it to counsel to flesh out this skeleton in closing argument. *Cox v. Cooper*, Ky., 510 S.W.2d 530 (1974); *Rogers v. Kasdan*, Ky., 612 S.W.2d 133 (1981). Thus viewed, the instruction was essentially correct and reasonably intelligible. Movant claims that it inadequately explains negligence based on failure to warn. But the instruction was sufficiently all encompassing so that counsel in argument could argue the import of the evidence regarding need for explanation or warning to the jury.

## II. CONTRIBUTORY NEGLIGENCE

This case bears a striking parallel to *Post v. American Cleaning Equipment Corp.*, Ky., 437 S.W.2d 516 (1969) with respect to the need for a warning and contributory negligence. Post was injured by a commercial vacuum cleaner recently purchased by his employer which exploded when he plugged it into electricity of the wrong voltage. He claimed he was furnished equipment without adequate warning of the danger. We held that the same evidence which justified a finding that the warning was inadequate by "the same reasoning" was "pertinent as respects the issue of contributory negligence." *Post, supra* at 520. We stated:

"[T]he gauge for testing appellant's contributory negligence must be read in the light of the sufficiency of the warning to apprise him of the severity, gravity, and extent of the danger." *Id.*

■ An unknowledgeable user, unaware of the danger, using the machine for its intended purpose, is not necessarily negligent as a matter of law in using the machine in a different way than the manufacturer intended, when such use is reasonably foreseeable. c.f. *Penker Construc-*

*tion Co. v. Finley*, Ky., 485 S.W.2d 244 (1972). The same evidence that proved the need for a warning, may prove both negligence and lack of contributory negligence.

■ Respondent premised liability in this case on the *Restatement (Second) Torts*, § 388, which subjects "one who supplies ... a chattel for another to use" to liability "for physical harm caused by the use of the chattel ... if the supplier:

(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous."

We applied the *Restatement (Second) Torts*, § 388, in *Lloyd v. Lloyd*, Ky., 479 S.W.2d 623 (1972), to the supplier of a power-driven riding lawn mower who failed to explain "the mower's erratic jerking and lurching" qualities. As in the present case, questions of negligence and contributory negligence turned on reasonably foreseeable use and the user's lack of knowledge of the machine's potentially dangerous propensities.

Two additional sections of the *Restatement* also bear on this case. Section 390 of the *Restatement (Second) Torts* states the liability of one who supplies a chattel for the use of another "whom the supplier knows or has reason to know to be likely because of his ... inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm...."

Section 408 of the *Restatement (Second) Torts* states the liability of "[o]ne who leases a chattel as safe for immediate use ... to those whom he should expect to use the chattel ... for physical harm caused by its use in a manner for which, and by a person for whose use, it is leased, if the lessor fails to exercise reasonable care to make it safe for such use or to disclose its actual

condition to those who may be expected to use it."

Sections 388, 390, and 408 of the *Restatement (Second) Torts* individually and collectively focus on liability in negligence for unreasonable conduct by the supplier of a chattel in circumstances such as those as exist in the present case.

The trial court's instructions properly submitted the issue of contributory negligence to the jury.

## III. CREDITS AGAINST THE JUDGMENT

By post-trial motion movant asked credit against the judgment: (1) for the $10,000 paid to Mitchell immediately before trial by co-defendant, Ground Hog, Inc., as a partial settlement; and (2) for $6,000 paid to Mitchell as disability pay by his employer under a union contract. He was entitled to those benefits when he was disabled from work by injury from any cause not work related, without regard to whether he might have a claim against a third party.

These two claims for credit raise separate problems and we will discuss them separately.

### A. THE PARTIAL SETTLEMENT

The $10,000 paid by co-defendant, Ground Hog, Inc., was a payment by a party sued as tortfeasor along with Burke. It was made in partial satisfaction for the same injury which is the subject matter of the complaint against Burke.

■ It is a tort rule of longstanding that where two or more persons are potentially liable for a single indivisible harm, a payment by or on behalf of any of them shall be a credit against the total amount due. *Prosser and Keeton on Torts*, 5th ed., 1984, §§ 49, 52; *Restatement (Second) Torts*, § 885(3). In *Daniel v. Turner*, Ky., 320 S.W.2d 135 (1959), we state the general rule:

"It is well settled that a party can have but one satisfaction for an injury resulting from a tort...." *Id.* at 138.

■ The receipt of *full* satisfaction discharges the claim. Receipt of *partial* satisfaction, as here, discharges the claim pro tanto. *Beech v. Deere & Co.*, Ky.App., 614 S.W.2d 254, 257 (1981), states the purpose of the rule, "to avoid an unjust enrichment or a double recovery."

■ Recently, in *Richardson v. Eastland, Inc.*, Ky., 660 S.W.2d 7, 9 (1983), we recognized that the injured party should not forfeit the right to full compensation by accepting payment in partial satisfaction from one of several persons potentially liable. Conversely, it is equally fundamental that the injured party's right of recovery should be limited to payment of the amount constituting full satisfaction. On principles universally recognized (*Prosser and Keeton, supra; Restatement, supra*), Burke was entitled to credit for the amount paid by Ground Hog, Inc.

Mitchell claims that Burke has forfeited this obvious entitlement because Burke's counsel insisted in discussion before the trial that this was "not an *Orr v. Coleman* case." *See Orr v. Coleman*, Ky., 455 S.W.2d 59 (1970). The record shows that at the instruction phase neither side asked for an *Orr v. Coleman* type of instruction.

In *Orr v. Coleman*, we changed the rules on how to submit the case against a nonsettling tortfeasor to the jury where there was a settling tortfeasor. But we did *not* discuss what happens when the *Orr v. Coleman* method is not followed and the nonsettling defendant later demands a credit against the judgment.

In *Orr v. Coleman*, we fashioned a rule peculiar to this jurisdiction that the jury shall apportion between the nonsettling tortfeasor and the settling tortfeasor who is now no longer a party. KRS 454.040, the statute which permits (but does not require) the jury to apportion its verdict among the parties' defendant on trial, was applied by analogy, while conceding that the words of the statute had no expressed application to this state of facts. We are now faced with what to do where the nonsettling defendant failed to ask for, and the trial court failed to utilize the *Orr v. Cole-*

*man* procedure. No apportionment has been made. Nevertheless, the movant insists on the general rule that affords the credit.

In *Orr v. Coleman, supra,* we started with this premise:

"Aside from the procedural question, when two tortfeasors are in pari delicto [2] this court consistently has required that the amount received from one of them in partial satisfaction of the whole claim be credited against the full amount of damages as subsequently determined in a trial against the other. [Cases cited.]" 455 S.W.2d at 60.

The "procedural question" presented by the litigants did *not* relate to apportionment. The question presented related to how the credit due the nonsettling tortfeasor should be handled—by advising the jury of the fact and amount of settlement, or by not advising the jury about the settlement and, instead, simply giving credit in the judgment for the amount previously paid.

We settled this argument stating:

"In any event, we are of the firm opinion that neither the fact nor the amount of the settlement should be communicated to the jury that tries the issue of the nonsettling tortfeasor's liability." 455 S.W.2d at 61.

The result, had we stopped at this point, would have been to provide a credit to the nonsettling tortfeasor for the amount paid by the settling tortfeasor, by simply deducting the amount of the settlement from the judgment against the settling tortfeasor. But, we did not stop. We then embraced the apportionment theory:

"[T]he jury should be required to assess the total amount of the claimant's damages and fix the proportionate share of the nonsettling tortfeasor's liability on the basis of his contribution to the causation. The trial court may then compute

the amount of the judgment to be entered against the nonsettling tortfeasor, thus fixing his ultimate liability (and incidentally obviating any question of or necessity for contribution)." 455 S.W.2d at 61.

Under this rule, the jury cannot assess legal causation, and thus can make no apportionment, against a settling defendant who was *not* found at fault. Burke and Mitchell now argue, for different reasons, that Ground Hog, Inc. had no legal liability under the evidence in this case. If true, the jury would not have been permitted to apportion.

*Orr v. Coleman* requires *both* the settling and nonsettling defendant to be found at fault *before* apportioning liability. *Orr v. Coleman* can only be used *after* the jury has found fault on the part of both the settling and the nonsettling defendant. It presupposes a finding of fault followed by apportionment. So if Ground Hog, Inc. had no legal liability, this was *not* a case for an *Orr v. Coleman* instruction, although for a different reason than the one movant pressed upon the trial court.

But, neither *Orr v. Coleman* nor any case decided subsequently embraces double recovery as a substitute for the credit procedure. As stated in the *Restatement (Second) Torts,* § 885(3):

"A payment by *any person* made in compensation of a claim for a harm for which others are liable as tortfeasors diminishes the claim against the tortfeasors, at least to the extent of the payment made, whether or not the person making the payment is liable to the injured person and whether or not it is so agreed at the time of payment or the payment is made before or after judgment." (Emphasis added.)

In the context of the *Restatement* "any person" means all those against whom the injured party has asserted tort liability for

---

**2.** If both Ground Hog and Burke were in fact liable, this would be a textbook case of two defendants who are joint tortfeasors *in pari delicto,* which requires only that both be at fault, not that they be both at fault in the same man-

ner or under the same theory of tort liability. *Duncan v. Judge,* 43 Wash.2d 836, 264 P.2d 865, 870 (1953); 23 *Words & Phrases,* Joint Tort Feasors in Pari Delicto, p. 221.

a single indivisible harm, regardless of whether liability could be proven in fact. See Comment on § 885 Subsection (3), *Restatement (Second) Torts*, pp. 335–36.

■ The trial court erred when it denied Burke's motion for a credit against the amount of the verdict for $10,000, the amount paid by Ground Hog, Inc. The fact that *Orr v. Coleman* was not applied does not bar a credit in the circumstances presented. The Court of Appeals was incorrect when it stated that Ground Hog, Inc. and Burke "were not joint tortfeasors." If Ground Hog, Inc. was a tortfeasor at all, it was a joint tortfeasor, and *Orr v. Coleman* applied. But the Court of Appeals' opinion does not confront what happens when *Orr v. Coleman* applies, and no *Orr v. Coleman* instruction has been asked for. We disagree with the Court of Appeals that movant's failure to tender an apportionment instruction foreclosed its right to a credit. Movant is not complaining of an error in the instructions but of the trial court's refusal to sustain his post-trial motion for credit. This was an appropriate motion in the circumstances. So much of the Court of Appeals' opinion as refuses this credit is reversed.

## B. DISABILITY PAY

Next, movant complains that it was also entitled to a credit for $6,000 that was paid to plaintiff by his employer during the period when he was disabled from work because of his injury. This claim for credit was also first raised by post-trial motion.

In support of this post-trial motion, movant refers us to a pretrial deposition which is not part of the record. We would have some difficulty using it to reverse the trial court. On the other hand, the affidavit from Mitchell in response to the motion, which is part of the record, states that he received this payment as "medical benefits and sick pay benefits through his employment with General Electric Co."

Movant's Brief says that this money was "paid to [Mitchell] pursuant to the union contract." Assuming this to be true, we conclude that the union contract required

that General Electric provide, either directly or through insurance, sick and accident benefits during a period when the employee is disabled from work by an off-the-job injury, whatever might have caused the injury.

■ It is well settled that a tortfeasor is not entitled to any credit against what he owes for payments of medical expenses or disability benefits paid by a *collateral source* to the tort victim pursuant to a contractual obligation owed to the victim from the collateral source, whether it be first party insurance coverage, employment benefits, or otherwise. *See Hellmueller Baking Co. v. Risen*, 295 Ky. 273, 174 S.W.2d 134 (1943), and cases cited therein. Nor is the tortfeasor entitled to introduce evidence at trial of such payments, except to corroborate other evidence, if there is any, that establishes malingering. *Hellmueller Baking Co. v. Risen, supra*, 174 S.W.2d at 136.

Whereas some of the statements by our Court in our opinion in *Rankin v. Blue Grass Boys Ranch, Inc.*, Ky., 469 S.W.2d 767 (1971) created temporary confusion as to the precise meaning of the collateral source rule, the case of *Davidson v. Vogler*, Ky., 507 S.W.2d 160 (1974) clarified our holding in *Rankin*, and modified *Rankin* accordingly, citing and reaffirming the rule in *Hellmueller Baking Co. v. Risen, supra*.

In *Davidson v. Vogler, supra*, after citing the general rule, 22 Am.Jur.2d, Damages § 208, p. 291, the court states that to depart from the collateral source rule would provide the tortfeasor a "windfall" to the substantial detriment of the injured party.

There is a sharp distinction between collateral source benefits and payments by another person also charged with liability for the injury which is the subject matter of the lawsuit. With collateral source benefits the injured person is entitled to payments by reason of personal insurance or an employment contract. These benefits are payable whatever the cause of the inju-

ry. They are contractual obligations unrelated to the subject matter of the case, except fortuitously. On the other hand, payments by or on behalf of another person against whom claim has been made for the same injury which is the subject matter of the law suit, whether such person is actually liable in fact or not, is made towards satisfaction of a common liability. The former is a payment to which the recipient is entitled whatever the source of the injury and bears no relation to the law suit.

The latter is a payment to which the recipient is entitled because of his tort claim, to which he is entitled to only one satisfaction. The first type is insurance against losses which follow any injury, whatever the source. The second type of payment is made to obtain release from potential liability which is the subject matter of the law suit. The tortfeasor is not entitled to share in the benefits that the victim has arranged to receive should he be injured from sources unrelated to the lawsuit.

For the reasons stated, we affirm the Court of Appeals except in denying credit for the $10,000 paid by Ground Hog, Inc. in partial satisfaction of respondent's claim. We remand the case to the trial court to amend the judgment to give credit for the $10,000 paid by Ground Hog, Inc. In all other respects the judgment of the trial court is affirmed.

STEPHENS, C.J., and AKER, GANT, STEPHENSON and VANCE, JJ., concur.

LEIBSON and WINTERSHEIMER, JJ., dissent by separate opinion.

LEIBSON, Justice, dissenting.

Respectfully, I dissent.

I agree that the result reached in this case is correct. But we cannot be logical in reaching this result unless we also overrule *Orr v. Coleman,* Ky., 455 S.W.2d 59 (1970). As the opinion now stands, the nonsettling defendant, Burke, was permitted an *option* whether to ask for an *Orr v. Coleman* instruction or to keep silent and then ask for a credit against the amount of the verdict for the amount previously paid by the settling defendant, Ground Hog, Inc.

A decision that permits a credit is correct. But a decision that permits this option is erroneous. This case is another glaring example of what is wrong with *Orr v. Coleman. Orr v. Coleman* doesn't fit in the tort system and it doesn't work.

By its explicit terms, KRS 454.040, the apportionment statute transmogrified in *Orr v. Coleman,* applies *only* where the jury decides among parties on trial who are multiple defendants. KRS 454.040 provides that *after* the jury decides upon the correct amount for the injury, the jury *then elects* whether (1) to apportion the award by percentages among those parties' defendant whom it has found liable, or (2) to return its award in a single sum for which these defendants are jointly and severally liable. In either event, when the verdict thus apportioned is thereafter paid the plaintiff receives the full amount the jury has decided is appropriate for the injury.

On the other hand, under *Orr v. Coleman, supra,* there is no election. The jury is *required* to apportion its award by percentages based on legal causation between nonparties who have settled and are no longer a party and the nonsettling defendants. There can be no assessment against a person who is not at fault. Where the former defendant who has settled is found not at fault *Orr v. Coleman* runs contrary to the tort system because then the partial satisfaction paid by the former defendant in settlement simply provides a windfall for the plaintiff.

Even where the jury finds fault on the part of both the settling and nonsettling defendant, *Orr v. Coleman* works against the grain of the tort system. The plaintiff will *never* be paid the amount the jury has decided is appropriate for the injury *unless* the percentage of the award set by the jury against the settling defendant, when translated to dollars, *and* the percentage of the award set by the jury against the nonset-

tling defendant, when translated to dollars, total the jury's award. *Invariably* the plaintiff will be overcompensated or undercompensated. If it adds up to more, the plaintiff gets unjust enrichment and double recovery. If less, the nonsettling defendant gets a windfall and the plaintiff gets shorted on the amount the jury has decided is appropriate for the injury.

To use the present case as an illustration: the jury decided Mitchell was entitled to compensation for the injury in the amount of $17,955.76. Ground Hog, Inc. has prepaid $10,000 as a partial satisfaction of the amount due. Under *Orr v. Coleman,* the only way that Mitchell would be paid the additional amount which is appropriate, $7,955.76, would be in the unlikely event that the jury would have found both Ground Hog and Burke at fault and then apportioned 55.7 percent against Ground Hog and 44.3 percent against Burke.[1] In that event, and no other, Burke would pay an amount which, when added to what Ground Hog has already paid, would add up to the approximate compensation to which Mitchell was entitled according to the decision of the jury. Any result other than Ground Hog's 55.7 percent and Burke's 44.3 percent is a windfall for either the movant, Burke, or the respondent, Mitchell.

*Orr v. Coleman* is an opinion which defies logical analysis. It cannot be integrated to work in tandem with the main body of tort law. It should be overruled as a precedent, and the principle discarded. In its place we should rejoin the mainstream of American law, and simply give the nonsettling defendant credit in the judgment for whatever payments have been made by other persons which constitute a partial satisfaction for the harm the claimant has sustained.

WINTERSHEIMER, Justice, dissenting.

I most respectfully dissent from the majority opinion because I believe the law of Kentucky requires an *Orr v. Coleman* type

instruction in any case involving apportionment. The better practice would be for this court to fashion a specific holding which would require the giving of such an instruction in every case of this nature.

The lengthy and learned discussions of the general propriety of such instruction in both the majority and other dissenting opinion leads me to the conclusion that the only logical and legally correct result is to remand this case for a new trial in which the *Orr v. Coleman* instruction is given, even though it was not originally requested in the first proceedings.

---

1. Of course, this presupposes that Ground Hog, Inc. was found liable, a condition precedent to apportionment and presumably nonexistent in this case.