RENDERED: APRIL 23, 2026
TO BE PUBLISHED

# Supreme Court of Kentucky

2024-SC-0309-DG

SGT. KEVIN BURTON; LT. FRANK
CHAD TAYLOR; AND SGT. MIKE
GARYANTES

APPELLANTS

V.

ON REVIEW FROM COURT OF APPEALS
NO. 2022-CA-1028 & 2022-CA-1108
FRANKLIN CIRCUIT COURT NO. 19-CI-01246

KENTUCKY STATE
POLICE/COMMONWEALTH OF
KENTUCKY

APPELLEE

**OPINION OF THE COURT BY JUSTICE GOODWINE**

Appellants Sgt. Kevin Burton, Lt. Frank Chad Taylor, and Sgt. Mike Garyantes brought an action against their former employer, Kentucky State Police ("KSP"), under the Kentucky Whistleblower Act ("KWA") in the Franklin Circuit Court. A jury found in their favor and awarded them $900,000 collectively in punitive damages for their claims. KSP appealed as a matter of right, and the Court of Appeals reversed and remanded for a new trial because of erroneous jury instructions. Appellants sought discretionary review, which we granted. After review of the record, applicable law, and the arguments of the parties, we affirm the decision of the Court of Appeals.

## BACKGROUND

Appellants are former employees of KSP Post 4. They initiated their KWA action against KSP in 2019. They alleged KSP retaliated against them for reporting concerns about "irregularities and thefts of evidence from Post 4." They reported that Sgt. Ryan Johnson took evidence from an open case for personal use, that evidence destruction forms were improperly completed, and that KSP employees covered up Johnson's actions rather than properly investigating them. They claimed KSP officials retaliated against them by threatening to transfer them, initiating an internal affairs investigation into Garyantes on an unrelated incident, and constructively discharging Burton.

The case progressed to trial. Both parties tendered proposed jury instructions to the trial court. After multiple discussions with counsel, the court issued final jury instructions. Ultimately, the jury returned verdicts in favor of Appellants and awarded $500,000 in punitive damages to Burton[1] and $200,000 in punitive damages to each Garyantes and Taylor. The court denied KSP's motions for a new trial and judgment notwithstanding the verdict.

KSP appealed the judgment as a matter of right to the Court of Appeals.[2] Among other issues, KSP argued the trial court erroneously instructed the jury on the requirements of the KWA. The Court of Appeals was convinced by this

---

[1] The jury was instructed on compensatory damages for Burton but declined to award such damages.

[2] Appellants filed a cross-appeal on the issue of attorney's fees. The Court of Appeals dismissed the cross-appeal on Appellants' own motion.

2

argument and reversed and remanded the case for a new trial. Appellants then moved for discretionary review which we granted.

## ANALYSIS

On discretionary review, Appellants argue KSP waived any error in the jury instructions.[3] "A properly preserved challenge to the contents of a given jury instruction is a question of law subject to de novo review on appeal. But if a party fails to preserve properly a challenge to jury instructions in the trial court, the challenge is not entitled to appellate review." *Norton Healthcare, Inc. v. Disselkamp*, 600 S.W.3d 696, 709-10 (Ky. 2020) (footnote omitted).

First, KSP did not waive its argument related to the jury instructions. Appellants do not dispute the Court of Appeals' holding that the final instructions were erroneous or that KSP tendered proposed jury instructions without the erroneous language. Instead, Appellants argue that regardless of the tendered instruction, KSP ultimately waived any error because their counsel did not object to the final jury instructions.

> No party may assign as error the giving or the failure to give an instruction unless he has fairly and adequately presented his position by an offered instruction **or** by motion, **or** unless he makes objection before the court instructs the jury, stating specifically the matter to which he objects and the ground or grounds of his objection.

---

[3] Appellants also argue KSP did not comply with Kentucky Rules of Appellate Procedure (RAP) 32(A)(4) by failing to include preservation statements in its brief before the Court of Appeals. We note that Appellants allege they preserved this argument by first raising it in their petition for rehearing before the Court of Appeals. Failure to raise this argument in their original briefs amounts to waiver. *Johnson v. Commonwealth*, 450 S.W.3d 707, 713 (Ky. 2014). The Court of Appeals declined to address KSP's compliance with RAP 32(A)(4). We also decline to do so.

CR[4] 51(3) (emphasis added). This rule is meant to ensure the "best possible trial" and to give the trial court "an opportunity to correct any errors before instructing the jury." *Sand Hill Energy, Inc. v. Smith*, 142 S.W.3d 153, 162-63 (Ky. 2004) (footnotes and internal quotation marks omitted). It also dictates that counsel be an active participant in the court's crafting of the instructions so that counsel cannot intentionally build reversible error into the final instructions. *Burke Enters., Inc. v. Mitchell*, 700 S.W.2d 789, 792 (Ky. 1985). We have repeatedly refused to review errors in instructions alleged for the first time on appeal as unpreserved. *Fraser v. Miller*, 427 S.W.3d 182, 186 (Ky. 2014); *Ellison v. R & B Contracting, Inc.*, 32 S.W.3d 66, 72-73 (Ky. 2000); *Kroger Co. v. Willgruber*, 920 S.W.2d 61, 64 (Ky. 1996); *Mapother and Mapother, P.S.C. v. Douglas*, 750 S.W.2d 430, 431 (Ky. 1988); and *Cooper v. Cooper*, 485 S.W.2d 509, 511 (Ky. 1972).

The plain language of CR 51(3) allows a party to preserve its objections to jury instructions through **any one** of the three listed methods. "If a party seeks to preserve error under [the rule] by tendered instruction instead of specific objection, that party must actually tender the desired instruction[.]" *Owens-Corning Fiberglas Corp. v. Golightly*, 976 S.W.2d 409, 416 (Ky. 1998). So long as the "offered instructions clearly present [the] party's position, no further action is required to preserve for appellate review[.]" *Sand Hill*, 142 S.W.3d at 163. A party has not fairly and adequately presented their position if:

---

[4] Kentucky Rules of Civil Procedure.

> (1) the omitted language or instruction was not contained in the instruction tendered to the court; i.e., when the allegation of error was not presented to the trial court *at all*; (2) the minor differences between the language of the tendered instruction and the instruction given by the trial court would not call the trial court's attention to the alleged error; or (3) the tendered instruction itself was otherwise erroneous or incomplete.

*Id.* at 163-64 (footnotes omitted).

Here, in Instruction No. 1(a), the jury was instructed as follows:

> State whether you are satisfied by the evidence as follows (if you are satisfied, answer YES):
>
> That the Kentucky State Police's handling of the tennis shoe and lip balm issue constituted an actual or suspected violation of any law, statute, executive order, administrative regulation, mandate, rule, or ordinance, or any facts or information relative to actual or suspected mismanagement, waste, fraud, abuse of authority, or a substantial and specific danger to public health or safety and that Plaintiff Sgt. Kevin Burton's support of Lt. Frank Chad Taylor or Sgt. Mike Garyantes or bringing facts and information to the attention of Commonwealth Attorney Shane Young and/or Kentucky State Police Sgt. Clint Collins and/or Kentucky State Police Sgt. Kevin Warrell was a **good faith disclosure** and such disclosure was a **contributing factor** in the decision to take or threaten to take **a personnel action** against Sgt. Kevin Burton to discourage or punish Sgt. Kevin Burton from making the disclosure.

(emphasis added).[5]

In contrast, KSP's tendered Instruction No. 1 stated:

---

[5] The jury was instructed separately on the claims of the three plaintiffs. We recite only the instruction on Burton's claims because it is nearly identical to the instructions related to the other plaintiffs.

You will find for Plaintiff, Kevin Burton, and against Defendant, KSP, under this instruction if you are satisfied by the evidence:

(A) That Kevin Burton made, aided, supported, or substantiated a **good faith report(s)** or **disclosure(s)** to an appropriate body or authority of a violation of state law or of mismanagement, waste, fraud, abuse of authority, or a danger to public health or safety.
. . .

AND

(B) That KSP took **materially adverse action(s)** against Kevin Burton;
. . .

AND

(C) That Kevin Burton's disclosure(s) to the appropriate authority was a **contributing factor** in KSP's decision to take adverse personnel action(s) against him.

(emphasis added).[6] Before the Court of Appeals, KSP argued the jury should have been instructed on whether KSP took materially adverse employment actions against Appellants. It was their position, as evidenced by the above proposed instruction, that under the KWA, the jury must find that the Appellants suffered specific adverse employment actions.

KSP's proposed instructions meet the requirements set out in *Sand Hill*. First, the instruction clearly asserts KSP's position that the jury must find Appellants proved KSP took materially adverse actions against them. Second, the difference between the tendered and final instructions is not minor. The

---

[6] KSP tendered instructions for each plaintiff's claims. We recite only the instruction on Burton's claims because it is nearly identical to the instructions related to the other plaintiffs.

6

final instructions assumed KSP had "take[n] or threatened to take a personnel action" against each Appellant. This failure to require the jury to specifically find such an action was taken by KSP is significant. Third, as we will describe below, KSP's tendered instruction was not otherwise erroneous.

Furthermore, we are unconvinced by Appellants' argument that KSP waived any error otherwise preserved by their proposed instructions. Appellants rely on a single statement made by counsel to allege KSP affirmatively agreed to the erroneous instructions. It is true that nearly all issues can be waived by either inaction or consent. *Commonwealth v. Steadman,* 411 S.W.3d 717, 724 (Ky. 2013). It is also true that at the end of the final bench conference on the jury instructions, KSP's counsel said, "We're not objecting to the final version." However, we must consider this statement in context of the trial itself.

In its brief, KSP directs our attention to three bench conferences among counsel and the trial judge.[7] First, during the conference on February 8, 2022, there was a discussion about whether the KWA requires Appellants to prove an "adverse personnel action." KSP argued it was required, while Appellants argued it was not. The judge did not appear to decide any argument raised by

---

[7] We have reviewed the video record of the conferences and attempt to summarize them in relevant part herein. Some portions are difficult to discern either because counsel and/or the trial judge cannot be clearly heard on the recording or because it is unclear to what the discussions refer. For example, there are discussions of case law wherein neither counsel nor the judge state to which case(s) they are referring. Despite these limitations, we are confident in our analysis of the preservation issue.

the parties, but instead distributed the jury instructions to the parties and told them to review them for additional arguments the next day.

The following day, which was the last day of trial, the judge again raised the issue of whether the instructions should include language regarding an adverse personnel action. Ultimately, the judge rejected this argument and moved on to discuss other issues in the instructions for approximately twenty minutes. After a break for lunch, counsel and the judge returned to the discussion of the instructions. At one point, the judge referenced "material factors" and said, "we couldn't find anything on that, so we left it out." At the close of the third bench conference, the judge said he hoped the instructions were "set in stone" and asked counsel, "Can I get everyone to say yea[?]"[8] Appellants' counsel answered in the affirmative. KSP's counsel then said, "We're not objecting to the final version."

This statement does not amount to waiver of the jury instruction issue. First, as explained above, KSP's proposed instructions clearly presented its position to the court and, under *Sand Hill*, tendering them was sufficient to preserve its argument. 142 S.W.3d at 163. Furthermore, this statement by counsel does not prove KSP's "voluntary and intentional surrender or relinquishment" of its claim of error. *Vinson v. Sorrell*, 136 S.W.3d 465, 469 (Ky. 2004). While the video record does not demonstrate KSP made a clear objection to Instruction No. 1(a), it does show that counsel asserted its position

---

[8] The judge appeared to ask this question in jest. Both the judge and KSP's counsel laughed.

regarding personnel actions in a discussion with the trial judge and the judge rejected that argument. Counsel did not continue to pursue the argument and, when prompted by the court, stated she had no objections to the final jury instructions. In context, counsel's statements can be interpreted to be an agreement to move on with the trial after the court rejected its proposed instruction rather than waiver of the argument.

Finally, despite Appellants' failure to challenge the Court of Appeals' determination of error in Instruction No. 1(a), we will briefly address the substance of the instructions to provide clarity to the trial court on remand. The requirements of the KWA are laid out in KRS[9] 61.102 and KRS 61.103. To prove a violation of the statute, a plaintiff must first show:

> (1) the employer is an officer of the state; (2) the employee is employed by the state; (3) the employee made or attempted to make a good faith report or disclosure of a suspected violation of state or local law to an appropriate body or authority; and (4) the employer took action or threatened to take action to discourage the employee from making such a disclosure or to punish the employee for making such a disclosure.

*Davidson v. Commonwealth, Dep't. of Mil. Affs.*, 152 S.W.3d 247, 251 (Ky. App. 2004) (citing *Woodward v. Commonwealth*, 984 S.W.2d 477, 480-81 (Ky. 1998)). Under KRS 61.103(3), the plaintiff must also "show by a preponderance of evidence that the disclosure was a contributing factor in the personnel action." The burden then shifts to the employer "to prove by clear and

---

[9] Kentucky Revised Statutes.

convinging evidence that the disclosure was not a material fact in the personnel action." *Id.*

Herein, it is uncontested that the first and second elements under *Davidson* are met. The third element is contested but not relevant to the jury instruction issue now before us. The fourth element is at issue. First, we affirm the Court of Appeals' determination that the jury instructions must instruct the jury to find each of the contested elements individually. This leaves us to determine whether the law requires a jury to find KSP took "materially adverse action(s)" against each Appellant, as proposed by KSP's Instruction No. 1.

The KWA "recognizes the overt retaliatory act of reprisal as well as the subtle exercise of official authority or influence in the relationship between state employee and state government." *Commonwealth Dep't of Agric. v. Vinson,* 30 S.W.3d 162, 164 (Ky. 2000). In *Harper v. University of Louisville,* 559 S.W.3d 796, 802 (Ky. 2018), this Court inserted "adverse" into the language of KRS 61.103(3), to state that a plaintiff must show his good faith disclosure was a "contributing factor in the [adverse] personnel action" taken against him by his employer. The *Harper* decision repeatedly uses the phrase "adverse employment action" without explanation. *Id.* at 804-05, 809. Otherwise, this Court has left "personnel action" undefined. *Vinson,* 30 S.W.3d at 165.

While KRS 61.102(1) is broad in its description of prohibited conduct by employers, for an employee to prove a violation under the KWA, the personnel action taken against him must be "materially adverse." To reach this conclusion, we look to the Kentucky Civil Rights Act ("KCRA") because its

10

prohibition on retaliation is substantially similar to that of the KWA. KRS

344.280(1).[10] Despite the broad prohibition on retaliation in the KCRA, this

Court has construed the law to require a plaintiff to prove "a materially adverse

change in the terms and conditions of his employment." *Brooks v. Lexington-*

*Fayette Urb. Cnty. Hous. Auth.,* 132 S.W.3d 790, 802 (Ky. 2004). For retaliation

claims under the KCRA, we have defined a materially adverse action by an

employer as one which "might well have dissuaded a reasonable worker from

making or supporting a charge." *Norton Healthcare, Inc. v. Deng,* 487 S.W.3d

846, 855-56 (Ky. 2016) (quoting *Burlington N. & Santa Fe Ry. v. White,* 548 U.S.

53, 67-68 (2006)). This is a fact-specific inquiry. *Id.* at 856. We now adopt the

same standard for personnel actions under the KWA.

Therefore, KSP's tendered instructions were not erroneous. Under the

KWA, jury instructions must instruct the jury to decide whether (1) the

employee made a good faith disclosure or report; (2) the employer took or

threatened to take a materially adverse employment action; and (3) the good

faith disclosure or report was a contributing factor in the materially adverse

---

[10] Non-binding authority from both the Sixth Circuit Court of Appeals and the Kentucky Court of Appeals has relied on the KCRA to find that personnel action under the KWA must be materially adverse. *Harper v. Elder,* 803 F. App'x 853, 857 (6th Cir. 2020); *Arnold v. Holmes,* No. 2009-CA-000514-MR, 2010 WL 3810191, at *2-3 (Ky. App. Oct. 1, 2010); *Jones v. Oldham Cnty. Sheriff's Dep't,* No. 2009-CA-000350-MR, 2010 WL 1508150, *10-11 (Ky. App. Apr. 16, 2010).

employment action.[11]  On remand, the trial court must conform its instructions to these requirements.[12]

## CONCLUSION

Based on the foregoing, the decision of the Court of Appeals is affirmed.

All sitting.  Bisig, Conley, Keller, and Nickell, JJ., concur. Thompson, J., dissents by separate opinion in which Lambert, C.J., joins.

THOMPSON, J., DISSENTING: I agree with the majority opinion as to its interpretation of the methods set out in Kentucky Rules of Civil Procedure (CR) 51(3) for preserving objections to jury instructions. I also agree that the Kentucky State Police (KSP) originally preserved its objection to the proposed jury instructions by both furnishing its own instructions and arguing about its objection. I further agree with the majority opinion that a previously preserved objection can be waived.

I disagree with the majority's ultimate outcome, which essentially is based on whether "KSP failed to object to the final version of the jury instructions," rather than a consideration of whether "KSP affirmatively agreed

---

[11] This assumes that the first two elements under *Davidson* are not at issue in a case. We also note that, rather than including multiple elements in a single instruction as proposed in KSP's Instruction No. 1, a better practice would be to include each element in a separate instruction so that the jury clearly decides each element individually.

[12] The dissent suggests this outcome should not be based on whether KSP failed to object to the final version of the jury instructions, but whether KSP affirmatively agreed to the final version of the jury instructions. To clarify, the outcome turns on the trial court erroneously instructing the jury as a matter of law, not on whether counsel failed to object or affirmatively agreed with the trial court.

12

to the final version of the Jury Instructions."[13] I conclude that the KSP clearly affirmatively waived its previously preserved objection and is bound by such waiver.

When a trial court specifically asks if jury instructions are now satisfactory, here by first stating a hope the instructions were "set in stone" and asking counsel, "Can I get everyone to say yea[?]" the parties have the freedom to answer in the affirmative or in the negative.

Counsel for the Kentucky State Police (KSP) chose to affirmatively waive its previous objection by stating "We're not objecting to the final version." This statement was clear and unequivocal. It does not require further interpretation. Parties are allowed to waive objections, and they should be bound by their affirmative waivers.

When that question was posed, counsel for KSP could just as easily have said, "I have no further objections beyond those which I previously raised regarding these instructions" or "I continue to object to these instructions" or "Please note my continuing objection" or "We still disagree as to the wording of the instructions in variance with our proposed instructions," or a myriad of other negative responses. We need not try to peer into counsel's mind to determine that counsel in fact meant to continue to object despite stating the opposite.

---

[13] This quotation is from Sgt. Burton's appellate brief.

13

Therefore, I disagree with the majority opinion's conclusion that the KSP should be saved from its previous clear, affirmative statement waiving its previously preserved objection through our hindsight reinterpretation. I disagree that we must scour the record to try to save KSP from its improvident waiver by justifying that it was not really meant to be a waiver.

The majority opinion states in a footnote that it interprets this question by the trial court as being made "in jest" because the parties laughed. I disagree that it is appropriate to try to decide if the question was said in a humorous manner or in jest. Parties should take all questions that a trial court asks of them seriously and respond accordingly.

I fear that the majority opinion will require that our appellate courts increasingly be called upon to decipher whether trial courts and parties are being flippant, jesting, being ironic and the like, essentially being forced into making factual findings as to their intentions when that is not our role. Parties should abide by this simple instruction: Let your "yes" be "yes" and your "no" be "no."[14]

It is an oft-repeated statement that "[t]he appellants will not be permitted to feed one can of worms to the trial judge and another to the appellate court." *Kennedy v. Commonwealth*, 544 S.W.2d 219, 222 (Ky. 1976), *overruled on other grounds by, Wilburn v. Commonwealth*, 312 S.W.3d 321, 326-29 (Ky. 2010). Some version of this "can of worms" phrase appears in fifty published and 230

---

[14] This adage is of course a paraphrase of Matthew 5:37.

unpublished Kentucky opinions.[15] There are, of course, many additional opinions not using this specific phrase that rely on the basic, black-letter-law concept behind it, that appellate courts do not have the authority to review issues that were not raised before or decided by the trial court. *See, e.g., Reg'l Jail Auth. v. Tackett,* 770 S.W.2d 225, 228 (Ky. 1989) (citing Kentucky cases for this concept which were published between 1961 and 1938).

We will not be able to use this "can of worms" quote anymore or rely on the concept behind it. The majority opinion eliminates this whole body of law by in fact permitting the KSP to feed us a new can of worms, under the guise that we can independently interpret it as being the old can of worms by guessing what was in counsel's mind and adjudging how the trial court should have interpreted counsel's statement as meaning the opposite of what was said.

Additionally, the majority opinion will encourage every competent lawyer to engage in gamesmanship by packing every conceivable form of relevant jury instruction into its proposed instructions to preserve every possible issue regarding jury instructions. The majority opinion, while giving lip service to the concept that previously preserved objections can be waived, has effectively eliminated later waivers. Going forward, it will no longer matter whether

---

[15] As adjudged by conducting an "advanced" search in the Kentucky database on Westlaw for "can of worms." While not every instance may be referring to the basic underlying concept set out in the quoted sentence, most of such instances are.

counsel states it is satisfied with the ultimate instructions, because whatever counsel says it will not operate as a waiver.

We do a disservice to our trial courts by burdening them with reviewing extra instructions, and trial counsel by not trusting that they can decide for themselves to waive past objections through affirmative statements.

Accordingly, I dissent.

Lambert, C.J., joins.

COUNSEL FOR APPELLANT:

Thomas E. Clay
Thomas E. Clay, P.S.C.

COUNSEL FOR APPELLEE:

Alea Amber Arnett
Shawna Virgin Kincer
Lauren Lewis
Department of Kentucky State Police